**Amy Baggio, OSB #01192**
**amy@baggiolaw.com**
**Baggio Law**
**621 SW Morrison, Suite 1025**
**Portland, OR 97205**
**Tel:   (503) 222-9830**
**Fax:   (503) 274-8575**

**John S. Ransom, OSB #742655**
**john@ransomblackman.com**
**Ransom Blackman LLP**
**1001 SW 5th Ave Ste 1400**
**Portland OR  97204**
 **Tel:   (503) 228-0487**
**Fax:   (503) 227-5984**

**Attorneys for Defendant**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CR No. 3:12-cr-659-MO |
| Plaintiff, | |
| v. | **DEFENDANT'S FIRST REQUEST FOR DISCOVERY** |
| **REAZ QADIR KHAN,** | |
| Defendant. | |

   The defendant, Reaz Qadir Khan, through counsel, requests the government to produce discovery in accordance with Federal Rule of Criminal Procedure 16 and the Constitution.  This motion is to formalize the defendant's request that the Government meet its obligations

to provide basic discovery under the Constitution and Rule 16.

Specific areas that are disputed and need resolution will be addressed in separate motions, including a first motion to compel discovery, to be filed at a later date.

### GENERAL REQUESTS FOR DISCOVERY

Rule 16 of the Federal Rules of Criminal Procedure is "intended to prescribe the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases." *United States v. Armstrong,* 517 U.S. 456, 475 (1996)(Breyer J., concurring) (quoting Advisory Committee's Notes on Fed. R. Crim. P. 16, 18 U.S.C. App., p.761); *see also* David W. Ogden, Guidance for Prosecutors Regarding Criminal Discovery (Jan. 4, 2010); USAM 9-5.001 (revised Jan. 2010).

Moreover, under the principles of *Brady v. Maryland*, 373 U.S. 83 (1963), "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *United States v. Hanna*, 55 F.3d 1456, 1461 (9th Cir. 1995)(same); *see United States v. Alvarez*, 86 F.3d 901, 905 (9th Cir. 1996) ("better practice is for the prosecutor herself to review [surveillance notes for *Brady* material]").

"The prosecutor's duty to disclose information includes a duty to disclose information known to other agents of the government." *See Giglio v. United States,* 405 U.S. 150 (1972).

Pursuant to Rule 16, physical possession of materials by the federal government is the touchstone of discoverability analysis. *United States v. Fort*, 472 F.3d 1106, 1118-19 (9th Cir. 2007). The word "government" refers to the federal government. *Id*. at 1111. The term "government agent" includes non-federal personnel whose work contributes to the federal criminal case. *Id*. at 1113. The phrase "in connection with investigating or prosecuting the case" includes any such work by any government agent at any time even before there is a federal case. *Id*. at 1119-20.

The prosecutor also has a continuing duty to disclose the following evidence as soon as the government or any of its agents discovers its existence. *See Mooney v. Holohan*, 294 U.S. 103, 108 (1935) (prosecutor must disclose that witness had committed perjury even when he first learns this at trial).

In light of the foregoing, and in light of the authority set forth below, the defendant requests discovery of the following:

1. All state, federal, or international report – to include all federal agencies, including the Central Intelligence Agency, involved in any aspect of an investigation of Mr. Khan or allged co-conspirator Ali Jaleel investigation – relating the circumstances of the seizure and search involving the defendant or his property, or any other search related to this case, listing the legal basis asserted for authority for the search, the items seized and the information obtained as a result of these searches and seizures. This information is necessary to enable the defendant to prepare motions to suppress evidence. Fed. R. Crim. P. (hereafter FRCP) 16(a)(1), 12(b)(4)(B), 41(h).

2. The names of all alleged co-conspirators presented to the grand jury.

3. The substance of all oral statements of the defendant or alleged co-conspirators to any government agent, including interviews with Federal Bureau of Investigation, Central Intelligence Agency, Homeland Security Investigations, or Immigration and Customs Enforcement officials, and including but not limited to every communication (oral or written) purportedly belonging to alleged co-conspirator Ali Jaleel from 2005 through 2013. FRCP 16(a)(1)(A).

3. All written or recorded statements of the defendant either 1) within the government's possession, custody, or control; 2) made in response to interrogation by a person the defendant knew was a government agent; or 3) made before a grand jury relating to the charged offense. FRCP 16(a)(1)(B). These written or recorded statements should include, but are not limited to, telephone conversations, written correspondence,

        journal entries, emails, internet communications (searches, postings, written chats, live video chats, keystroke monitoring, file transfers) or any other captured written or recorded statement allegedly attributable to Mr. Khan from 2005 to present.

4. Any agent's underlying rough notes of the statements requested in items 2 and 3 above, including all entries in officers' field notebooks or equivalent. *See United States v. Harris*, 543 F.2d 1247, 1253 (9th Cir. 1976) (rough notes of interviews, especially with the accused, are discoverable and must be preserved).

5. A copy of the defendant's prior criminal record, if any exists. FRCP 16(a)(1)(D).

6. All books, papers, documents, tangible objects, photographs, buildings or places which are "material to preparing the defense," including a list of surveillance and/or evidence gathering methods utilized, including but not limited to: preservation letters, agency-issued subpoenas, grand jury subpoenas, copies of and reports related to postal mail related to targets or witnesses involved in this case via mail covers or Mail Isolation Control and Tracking Program, court orders for telephone data, FISA/court-authorized phone monitoring, non-court-authorized phone monitoring or phone data collection (such as DCSNet, Fairview, or Room 641A), FISA/court-authorized evidence seizures; FISA Amendments Act (FAA) evidence gathering, deployment and use of computer monitoring (such as Computer and Internet Protocol Address Verifier (CIPAV) or Magic Lantern), internet/email data collection and information gathering tools (such as X-Keyscore, PRISM, Fairwind, Stellar Wind, Boundless Informant, Carnivore, NarusInsight, Upstream, and Tempora), tips received from the Special Operations Division (SOD) related to this investigation, any Suspicious Activity Reports (SAR) referencing any target or witness involved in this case, data files of targets or witnesses in the FBI's MAINWAY or Main Core database. Pursuant to FRCP 16(a)(1)(E), a request that the government disclose what investigative techniques were used and the fruits of those request is reasonable,

       relevant, and necessary for Mr. Khan to prepare his defense, including the critical assessment of potential motions litigation.

7. The defense also requests production of training manuals as to how any of these or similar investigative methods were used, a statement of how and when those methods were utilized in relation to the investigation of Mr. Khan, and the fruits thereof. FRCP 16(a)(1)(E)(i); *United States v. Cedano-Arellano*, 332 F.3d 568, 571 (9th Cir. 2003) (where reasonable suspicion was based on the alert of a narcotics detection dog, the dog's training and certification records are material and discoverable).

8. All books, papers, documents, tangible objects, photographs, buildings or places which were "obtained from or belong[] to" the defendant. FRCP 16(a)(1)(E)(iii). Again, we specifically ask for disclosure of not only evidence purportedly belonging to the defendant, but a statement as to what legal authority was used to seize that information, and when and how those evidence-gathering techniques were used.

9. All books, papers, documents, tangible objects, photographs, buildings or places which are intended for use by the government as evidence in its case in chief. FRCP 16(a)(1)(E)(ii).

10. Any and all results or reports of physical or mental examinations and of scientific tests or experiments, including, but not limited to, forensic examination of digital devices, internet monitoring such as that described above, email monitoring/gathering, telephone records analysis, fingerprints, voice prints, and handwriting. FRCP 16(a)(1)(F). We request production of actual reports of software utilized to forensically testing or analyze digital devices, such as ENCASE, such that the defense will know how the digital devices were searched, using which software, which search terms, etc.. This discovery request made pursuant to FRCP 16(a)(1)(F) is in addition to the narrative summary expert reports the government is required to provide pursuant to FRCP 16(a)(1)(G).

11. A written summary of all expert-witness testimony the government intends to offer in its case-in-chief, whether or not the expert has prepared a written report, describing "the witnesses' opinions, the bases and reasons therefor, and the witnesses' qualifications." FRCP 16(a)(1)(G); *United States v. Barrett,* 703 F.2d 1076, 1081 (9th Cir. 1983) ("fairness requires that adequate notice be given to the defense to check the findings and conclusions of the government's experts"). This request would include, but is not limited to, any purported computer forensic experts, terrorism experts or cultural experts.

12. Written reports of examinations or tests by any government witness, including any language, cultural, national security, or computer forensic expert, who has conducted any physical or mental examination or any scientific test. FRCP 16(a)(1)(F).

13. A description of any prior conviction or prior "similar act" the government will seek to introduce at trial. Fed. R. Evid. 404(b)(requiring "reasonable notice in advance of trial . . . of the general nature of any such evidence").

14. The personnel files of each law enforcement agent who will testify in the case. The Assistant U.S. Attorney should direct that such files be examined for evidence of any allegations that any officer has ever made a false statement or has a reputation for dishonesty. *Kyles*, 514 U.S. at 437 ("prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf"); *see United States v. Carlisle,* 996 F.2d 1019, 1021 (9th Cir. 1993)(error not to disclose magistrate's characterization of agent's testimony as "absolutely incredible" which was in personnel file).

15. Reports and records relating to any eavesdropping, wiretapping, electronic recording of any kind relating to this case. *See* 18 U.S.C. §§ 2511-2522.

16. All notes or other writings or documents used by a prospective government witness before the grand jury. *United States v. Wallace,* 848 F.2d 1464, 1470-71 (9th Cir.

1988) (by referring to and using the notes during testimony before the grand jury, witness "adopt[ed] or approv[ed] of the statements as her own).

17. The name and address of any informant who communicated with the defendant in relation to the Government's investigation of Mr. Khan and/or the name of any person the government directed to meet with Mr. Khan prior to the time of his indictment. *Roviaro v. United States,* 353 U.S. 53, 60-61 (1957) ("Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.").

18. The names and addresses of all percipient witnesses interviewed by the government whom the government does not intend to call at the trial. *United States v. Cadet,* 727 F.2d 1453, 1469 (9th Cir. 1984).

19. The arrest and conviction record of each prospective government witness. *Carriger v. Stewart,* 132 F.3d 463, 480 (9th Cir. 1997)(when the star witness had long criminal record, it was "the state's obligation to turn over all information bearing on that witness's credibility"); *United States v. Strifler,* 851 F.2d 1197, 1202 (9th Cir. 1988) (criminal records of witnesses must be disclosed even if contained in witness' probation file).

20. Any evidence that a criminal case has recently been dismissed, either within the United States or abroad, against any prospective government witness. *See United States v. Smith,* 77 F.3d 511, 514-15 (D.C. Cir. 1996)(dismissal of two felony cases pending against prosecution witness were material to impeachment and should have been disclosed pursuant to *Brady*); *see also Giglio v. United States,* 405 U.S. 150 (1972) (credibility of witness).

21. Any evidence that prospective government witness has any criminal charge pending against him/her, either in the United States or abroad. *United States v. Fried,* 486 F.2d 201, 203 (2d Cir. 1973).

22. Any evidence that any prospective government witness is under investigation by federal or state authorities, or by authorities abroad. *United States v. Chitty,* 760 F.2d 425, 428 (2d Cir. 1985).

23. Reports, records, or memoranda of international, federal, or state agencies which describe, refer to, or otherwise comment upon their relationship with any informant involved in this case. *Roviaro, supra*, 353 U.S. at 53; U.S. Const. Amend. VI.

24. Any evidence of express or implicit understandings, offers of immunity, special treatment while in custody, or of past, present, or future compensation between a witness and the government or any of its agents, whether within the United States or abroad. *See Giglio,* 405 U.S. at 150-52; *United States v. Sedaghaty,* __ F.3d __, 2013 WL 4490922 at *9-*12 (9th Cir. Aug. 23, 2013) (reversing conviction because of *Brady* violation where FBI paid critical witness's husband thousands of dollars during underlying investigation and offered witness herself financial assistance with medical bills after trial); *Singh v. Prunty,* 142 F.3d 1157, 1162 (9th Cir.1998) (reversing conviction because of *Brady* violation where key witness received undisclosed "substantial benefits in exchange for his testimony," because "disclosure of an agreement to provide ... benefits, as well as evidence of the benefits themselves, could have ... substantially impeached [the witness's] credibility"); *United States v. Shaffer,* 789 F.2d 682, 689 (9th Cir. 1986) (moneys paid for ongoing undercover cooperation in another case); *United States v. Butler,* 567 F.2d 885, 889 (9th Cir. 1978) (prosecutor's "assurances" of future benefits).

25. Any evidence of any request for, discussion about, or advice concerning, special consideration in immigration proceedings, any plea bargain or requested benefit

between the United States or foreign governments and any prospective witness, whether or not the government(s) agreed to such consideration. *Silva v. Brown,* 416 F.3d 980, 986 (9th Cir. 2005)(government should have disclosed "the full extent of the prosecution's deal" with the witness).

26. All statements of any prospective witness relevant to his testimony or relevant to impeachment or bias. *See Kyles,* 514 U.S. at 454 (reversible error not to disclose evidence of misidentification by crucial witness); *Gonzalez v. Wong*, 667 F.3d 965, 982 (9th Cir. 2011) ("Where the withheld evidence opens up new avenues for impeachment, [even if significant impeachment evidence was already introduced] it can be argued that it is still material."); *United States v. Brumel-Alvarez,* 991 F.2d 1452, 1463-64 (9th Cir. 1993)(informant's recantation of earlier statement to DEA had to be disclosed under the Jencks Act, 18 U.S.C. § 3500 (2000), as it bore on credibility).

27. Any evidence that any prospective witness has made an inconsistent statement to the United States or any foreign government or any of their agents with respect to his or her proposed testimony. *See Kyles,* 514 U.S at 454 (reversible error not to disclose evidence of misidentification by crucial witness); *Sedaghaty,* __ F.3d __, 2013 WL 4490922 at *10-*11 (*Brady* violation where FBI failed to disclose interview reports that illustrated inconsistencies during witnesses' various interviews).

28. Any evidence that any prospective government witness has made a statement inconsistent with or contradictory to any statement by any other person whether or not a prospective witness. *See United States v. Minsky,* 963 F.2d 870, 874-76 (6th Cir. 1992) (witness's statement to FBI contradicted by third party).

29. Any evidence mitigating the punishment of the defendant. *Brady,* 373 U.S. at 85 (1963); *United States v. Weintraub,* 871 F.2d 1257, 1264 (5th Cir. 1989) (sentence

vacated where prosecutor failed to disclose testimony of co-conspirator that lessened amount of drugs attributable to defendant).

30. The commencement and termination date of the grand jury that indicted Mr. Khan. *In re Grand Jury Investigation*, 903 F.2d 180, 182 (3d Cir. 1990); *see also* 28 U.S.C.§ 1867(a) ("the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury"); FRCP 6(b)(2) ("[a] party may move to dismiss the indictment based on an objection to the grand jury").

31. All materials subpoenaed to the grand jury and grand jury testimony. FRCP 6(e)(3)(E)(i); and see *United States v. Brice,* 2:11-cr-00075-LRC (CR-23 & CR-24) (government motions for disclosure of grand jury testimony and material subpoenaed to the grand jury, noting such information should be disclosed to the defendant and his attorney "preliminary to" and "in conjunction with" the criminal prosecution "to allow the defendant to prepare for trial.")

32. The number (not names) of grand jurors attending each session of the grand jury and the number of grand jurors (not names) voting to indict Mr. Khan. *See United States v. Leverage Funding Systems, Inc.,* 637 F.2d 645 (9th Cir. 1980) (prerequisites to valid indictment are that "every grand jury session was attended by at least 16 jurors" and that "at least 12 jurors voted to indict"); *United States v. Alter,* 482 F.2d 1016, 1029 n.21 (9th Cir. 1973) (ministerial matters like court's legal instructions to grand jury must be disclosed).

33. The name of every prospective government witness to be called at trial. *See Arizona v. Manypenny,* 672 F.2d 761, 765 (9th Cir. 1982) (court has inherent authority to order discovery of names of witnesses); *United States v. Armstrong,* 621 F.2d 951, 954-55 (9th Cir. 1980) (same).

34. All documents reflecting over or covert military operations by the United states in

    Pakistan between December 14, 2005, and June 2, 2009, which are material to the defense against the conspiracy to violate the Neutrality Act charged against Mr. Khan in Count 1 of the indictment.

35. Any and all documents demonstrating(1) that agents of the United States were aware of Ali Jaleel's plans to emigrate from the Maldives to Pakistan in 2008 and (2) that agents of the United States sought to prevent Mr. Jaleel from emigrating.

  For each of the foregoing reasons, Mr. Khan respectfully requests that the government produce the materials requested above to protect and to enforce Mr. Khan's exercise of his Fourth, Fifth and Sixth Amendment rights and further, that the government specifically respond to each of the requests to allow the defense evaluate what issues need to be raised separately in a Motion to Compel.

  Respectfully submitted on September 6, 2013.

           /s/ Amy Baggio
           Amy Baggio
           Of Attorneys for Defendant