**Amy Baggio, OSB #01192**
amy@baggiolaw.com
Baggio Law
621 SW Morrison, Suite 1025
Portland, OR 97205
Tel:   (503) 222-9830
Fax:   (503) 274-8575

**John S. Ransom, OSB #742655**
john@ransomblackman.com
Ransom Blackman LLP
1001 SW 5th Ave Ste 1400
Portland OR  97204
 Tel:   (503) 228-0487
Fax:   (503) 227-5984

**Attorneys for Defendant**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 3:12-cr-659-MO |
| Plaintiff, | MEMORANDUM IN SUPPORT OF MOTION FOR DISCLOSURE OF MONITORING OF PRIVILEGED COMMUNICATIONS, MINIMIZATION PROCEDURES & FILTER TEAM PROTOCOL |
| v. | |
| **REAZ QADIR KHAN,** | |
| Defendant. | |

The defendant, Reaz Qadir Khan, through counsel, hereby provides this Memorandum in Support of his Motion for Disclosure of Monitoring of Privileged Communications, Minimization Procedures, and Filter Team Protocol.

**Page 1**    MEMORANDUM IN SUPPORT OF MOTION FOR DISCLOSURE OF MONITORING OF PRIVILEGED COMMUNICATIONS, MINIMIZATION PROCEDURES & FILTER TEAM PROTOCOL

**I.      FACTUAL BACKGROUND**

The government has provided discovery to the defense that raises pressing concerns regarding the monitoring of privileged communications. Specifically, the government has provided recordings, presumably obtained under the Foreign Intelligence Surveillance Act (FISA) or the FISA Amendments Act (FAA), that constitute privileged attorney-client communications and privileged attorney work product communications. The provision of these materials in discovery, plus publicly available information about government monitoring in other cases, provide the factual basis for this motion.

**A.      Evidence Of The Prosecution Team's Possession Of Privileged Attorney-Client Communications**

The government provided a January 21, 2010, eight-minute recorded phone call between the defendant and his immigration attorney in which Mr. Khan seeks his attorney's advice upon being told by the Federal Bureau of Investigation (FBI) that he is not permitted to fly overseas to visit his family. *See* Exhibit A (Jan. 21, 2010, Telephone Recording, *Submitted Under Seal*); Exhibit B (Unofficial Transcript Of Jan. 21, 2010, Telephone Recording, *Submitted Under Seal*).

This first call begins with the attorney answering the phone: "Law Offices." Mr. Khan identifies himself and states: "I need some help from you." *Id.* Mr. Khan then proceeds to describe the circumstances under which he was told by the FBI that he would not be permitted to fly overseas and asks his attorney for advice on what to do.[1]

---

[1] In conversations with undersigned counsel, the prosecutor has referred to another recorded attorney-client phone call in his possession. To date, the defense not been able to locate another attorney-client call in discovery, but the prosecutor has stated there is another such recording.

**Page 2      MEMORANDUM IN SUPPORT OF MOTION FOR DISCLOSURE OF MONITORING OF PRIVILEGED COMMUNICATIONS, MINIMIZATION PROCEDURES & FILTER TEAM PROTOCOL**

### B. Evidence Of The Prosecution Team's Possession Of Privileged Attorney Work Product

Three calls in discovery are evidence of government monitoring of attorney work product. Specifically, the government recorded calls between defense investigators in a separate federal criminal case and Mr. Khan, who at the time was apparently being independently targeted by the government. Each of these recordings include privileged attorney work product.

First, the government has disclosed the recording of a June 9, 2011, interview of Mr. Khan by Federal Public Defender (FPD) investigators who were conducting investigation on behalf of their client. Exhibit C (Jun. 9, 2011, Telephone Recording, *Submitted Under Seal*); Exhibit D (Unofficial Transcript Of Jun. 9, 2011, Telephone Recording, *Submitted Under Seal*).

In addition, discovery includes a second recorded interview between Mr. Khan and a FPD investigator on June 14, 2011. Like the first defense interview, the questions posed by the investigator disclose information about the defense's theories and investigation. *See* Exhibit E (Jun. 14, 2011, Telephone Recording, *Submitted Under Seal*); Exhibit F (Unofficial Transcript Of Jun. 14, 2011, Telephone Recording, *Submitted Under Seal*).

Third, the government provided a recorded message one of the FPD investigators left on Mr. Khan's voice mail in which she asks him to look for certain information that is needed by the defense team. *See* Exhibit G (Jul. 14, 2011, Telephone Recording, *Submitted Under Seal*); Exhibit H (Unofficial Transcript Of Jul. 14, 2011, Telephone Recording, *Submitted Under Seal*).

None of these recorded calls was either minimized by the agency per its minimization procedures nor filtered out by the Filter Team (if one exists). Instead, this privileged work product

was given to the prosecutor in Mr. Khan's case, who is also the prosecutor in the other federal criminal case.

## II.     ARGUMENT

As examined below, the prosecution team's possession of privileged communications raises a host of concerns for the defense and justifies the remedies sought in this Motion and Memorandum.

### A.     Mr. Khan Has Made A Sufficient Showing To Order Disclosure Of Monitoring, Minimization, And Filter Team Information To Avoid Prosecution Team Access To Information Protected By The Attorney-Client Privilege

The attorney-client privilege is "one of the oldest recognized privileges for confidential communications." *Swindler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (citing *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981); *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888)). The privilege is intended to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Id.*; *Upjohn, supra,* at 389. "It is important to note that the attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system." *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997). Communications between the defendant and his attorney are not discoverable under the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 16(b)(2).

The Ninth Circuit employs an eight-part test to determine whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

Page 4     MEMORANDUM IN SUPPORT OF MOTION FOR DISCLOSURE OF MONITORING OF PRIVILEGED COMMUNICATIONS, MINIMIZATION PROCEDURES & FILTER TEAM PROTOCOL

*United States v. Ruehle,* 583 F.3d 600, 607-08 (9th Cir. 2009) (quoting *In re Grand Jury Investigation,* 974 F.2d 1068, 1071 n. 2 (9th Cir.1992)).

Applying the eight-factor test, it is clear that the call between Mr. Khan and his attorney in January of 2010 is a privileged attorney-client communication. The fact that this call was produced in Mr. Khan's discovery illustrates problems with both the minimization procedures[2] (either on their face or as executed by the agency) and the Filter Team (if one exists).

**B.  Mr. Khan Has Made A Sufficient Showing To Order Disclosure Of Monitoring, Minimization, And Filter Team Information To Avoid Prosecution Team Access To Information Protected Under The Attorney Work Product Doctrine**

The work product doctrine protects an attorney's strategy and thoughts about litigation from adverse parties. *United States v. Nobles*, 422 U.S. 225, 238-39 (1975). Protected work product includes "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible" material. *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). The doctrine applies to a criminal defense investigator's work product. *Nobles*, 422 U.S. at 238-239 (holding work-product doctrine applies to defense investigator's memorandum describing an interview with a prosecution witness). Further, Federal Rule of Criminal Procedure 16(b)(2)(a) expressly protects from discovery defense team work product, including any prospective witness's statements to the defense team. Thus, the government violates the work-product doctrine if it

---

[2]Whether obtained under FISA or FAA, both require minimization procedures for electronic surveillance: 50 U.S.C. § 1801(h) (FISA definition of minimization); 50 U.S.C. § 1802(a)(1)(C) (FISA minimization procedures for electronic surveillance without court order); 50 U.S.C. § 1804(a)(4) (FISA requirement that minimization procedures appear in applications for court authorized electronic surveillance), 50 U.S.C. § 1881a(e) (FAA minimization procedures).

**Page 5    MEMORANDUM IN SUPPORT OF MOTION FOR DISCLOSURE OF MONITORING OF PRIVILEGED COMMUNICATIONS, MINIMIZATION PROCEDURES & FILTER TEAM PROTOCOL**

intercepts or inspects any defense team conversations regarding a case, including any conversations with witnesses or prospective witnesses.

The recorded call between FPD investigators and Mr. Khan is proof that the government records defense interviews with potential defense witnesses who are themselves under investigation by the government. The recording and dissemination practices illustrated by the evidence are particularly troubling because they show the unfair benefit to a single prosecutor who has access to electronic communications of multiple targets, any one of whom may themselves be a potential defense witness in another criminal case.

Even beyond the examples provided in the recorded FPD interviews, the charges against Mr. Khan relate to witnesses and events outside the United States, including countries such as Pakistan and the Maldives. The defense must engage in investigation and communication with non U.S. persons overseas. As discussed in the dissent of *Clapper v. Amnesty International*, international aspects of domestic cases give rise to a real possibility that the United States might be monitoring the individuals outside the United States pursuant to the FAA, the result of which would be the monitoring of defense counsel communications with those witnesses. 133 S. Ct. 1138, 1157-58 (2013) (Breyer, J., dissenting). Government monitoring of conversations with potential defense witnesses or experts, absent adequate procedural safeguards, effectively places a member of the prosecution team inside the defense camp. Even the specter of this possibility has a chilling impact on the way defense counsel communicate and investigate on behalf of their clients.

### C. The Government's Recording Of Privileged Communications Gives Rise To Constitutional Concerns, Requiring Further Disclosure And Review

Mr. Khan recognizes that the Sixth Amendment right to counsel generally attaches at the formal initiation of criminal proceedings. *Texas v. Cobb*, 532 U.S. 162, 167-68 (2001). However, wide-scale recording by the federal government of privileged communications, prior or subsequent to indictment, implicates the constitutionally protected right to privacy, due process, freedom of association, and to be free from unreasonable seizures. *See, e.g., Mapp v. Ohio,* 367 U.S. 643, 646–47 (1961) (Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."); *Kyllo v. United States*, 533 U.S. 27, 33 (2001) (Fourth Amendment search occurs "when the government violates a subjective expectation of privacy that society recognizes as reasonable."); *Gennusa v. Canova*, __ F.3d __, 2014 WL 1363541 (11th Cir. 2014) (discussing Fourth Amendment implications of police recording an uncharged criminal defendant's communications with his attorney); *United States v. Danielson*, 325 F.3d 1054, 1067-74 (9th Cir. 2003) (discussing Sixth Amendment violation resulting from unlawful intrusion into attorney client relationship if intrusion results in disclosure of defense trial strategy). *See also Griswold v. Connecticut*, 381 U.S. 479, 483-86 (1965) (recognizing a right to privacy, not expressly stated in the Constitution, but arising from the penumbra of rights guaranteed by the First, Fourth, Sixth, and Ninth Amendments.)

Brazen monitoring of privileged communications by our government has grand implications for the future of our criminal justice system. *See* N. Niarchos, THE NATION, *Has the NSA Wiretapping Violated Attorney-Client Privilege?* (Feb. 4, 2014) (defense attorneys describe how federal government recorded their privileged communications with their clients in national security

Page 7   MEMORANDUM IN SUPPORT OF MOTION FOR DISCLOSURE OF MONITORING OF PRIVILEGED COMMUNICATIONS, MINIMIZATION PROCEDURES & FILTER TEAM PROTOCOL

cases); Letter from American Bar Association to Directors of National Security Agency (Feb. 20, 2014) (describing ABA concerns over monitoring of privileged communications).[3]

Four of the calls provided in discovery raise privilege concerns. What is not known is how many additional privileged recordings (1) are in possession of the prosecution team but have not yet been disclosed to the defense; and (2) are in the possession of the filter team (if one exists) when such calls should have been minimized pursuant to properly executed and constitutionally-sufficient minimization procedures.

Accordingly, Mr. Khan has provided a reasonable basis to raise a concern over potential monitoring of his privileged communications made in furtherance of his defense, both within the United States and abroad. Mr. Khan's rights to counsel, to due process, to present a defense, and to a fair trial are all threatened if the government can monitor, and the prosecution team can access, communications such as these. U.S. Const. amend. V & VI.

### III.   CONCLUSION

Based on this motion and its exhibits, the defense has established a factual basis for the Court to conclude that minimization procedures (on their face, or as executed by the agency) and use of a Filter Team (if any) have been, or may be, ineffective to protect privileged communications. In light of this factual finding, Mr. Khan asks the Court to order disclosure of past and present monitoring of privileged communications, agency minimization procedures that allowed for

---

[3] The Nation article is available online at http://www.thenation.com/article/178225/has-nsa-wiretapping-violated-attorney-client-privilege (last visited Apr. 28, 2014); the ABA Letter to the NSA is available online at http://www.americanbar.org/content/dam/aba/uncategorized/GAO/2014feb20_privilegedinformation_l.authcheckdam.pdf (last visited Apr. 27, 2014).

**Page 8    MEMORANDUM IN SUPPORT OF MOTION FOR DISCLOSURE OF MONITORING OF PRIVILEGED COMMUNICATIONS, MINIMIZATION PROCEDURES & FILTER TEAM PROTOCOL**

recording of privileged communications in Mr. Khan's case, and the existence of, and any protocol related to, Filter Teams used by the government. If the government is not using a Filter Team to prevent improper dissemination of privileged communications to the prosecution team, the Court should order the creation of a Filter Team subject to a Court-authorized protocol.

Respectfully submitted on April 28, 2014.

        /s/ Amy Baggio
        Amy Baggio
        Of Attorneys for Defendant