**Amy Baggio, OSB #01192**
**amy@baggiolaw.com**
**Baggio Law**
**621 SW Morrison, Suite 1025**
**Portland, OR 97205**
**Tel:    (503) 222-9830**
**Fax:    (503) 274-8575**

**John S. Ransom, OSB #742655**
**john@ransomblackman.com**
**Ransom Blackman LLP**
**1001 SW 5th Ave Ste 1400**
**Portland OR  97204**
**Tel:    (503) 228-0487**
**Fax:    (503) 227-5984**

**Attorneys for Defendant**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No. 3:12-cr-659-MO** |
| Plaintiff, | **DEFENDANT'S MOTION FOR ORDER ALLOWING DEFENSE COUNSEL ACCESS TO OTHERWISE *EX PARTE* PROCEEDINGS PURSUANT TO FISA OR CIPA** |
| v. | |
| **REAZ QADIR KHAN,** | |
| Defendant. | ***ORAL ARGUMENT REQUESTED*** |

    The defendant, Reaz Qadir Khan, through counsel, hereby moves for an order allowing

defense counsel access to any *ex parte* proceedings sought, or filings offered, by the government in

under either the Foreign Intelligence Surveillance Act (FISA) or the Classified Information Procedures Act (CIPA).  This motion is filed simultaneously with, and in reference to, defendant's Motion for Disclosure of Monitoring of Privileged Communications, Minimization Procedures & Filter Team Protocol (hereafter Disclosure Motion), with the expectation that the government may seek to offer the Court its response to the Disclosure Motion, or exhibits to its response to the Disclosure Motion, *ex parte* under FISA or CIPA.[1]

I.      **Factual Background**

      A.      **General Likelihood That This Case Will Involve Classified Information**

On March 5, 2013, the government filed a notice that it intended to offer into evidence or otherwise use or disclose information derived from FISA §1806(c)(allowing for electronic surveillance) and FISA § 1825(d) (allowing for physical searches).  (CR-7.)  On April 3, 2014, the governed filed a second notice in which it stated its intent to offer into evidence or otherwise use or disclose in proceedings information obtained or derived from acquisition of foreign intelligence information gathered pursuant to the FISA Amendments Act (FAA), 50 U.S.C. §1881a *et seq.*  (CR-59.) Therefore, this case involves information that will likely invoke *ex parte* proceeding provisions such as those described in either FISA or CIPA.  50 U.S.C. §1806(f) (*ex parte* proceedings regarding electronic searches under FISA), 50 U.S.C. §1825(g) (*ex parte* proceedings regarding physical searches under FISA); 50 U.S.C. §1881e (invoking procedures set out in §1806(c) for information

---

[1]Defendant has limited his request in this motion to the government's response to defendant's Disclosure Motion; however, defense access to potentially *ex parte* CIPA or FISA proceedings is likely to be a recurring issue in this case.  Thus, full consideration of the access issue at this early juncture may  allow for more efficient consideration of similar access requests to other proceedings throughout the case.

gathered pursuant to the FAA) *see also* 50 U.S.C. §1854 (*ex parte* proceedings regarding pen registers or trap and trace devices); CIPA, Title 18, Appendix C, §6.

**B.    The Defendant's Disclosure Motion Ripens This Issue**

On April 28, 2014, the defendant filed his Disclosure Motion related to government monitoring of privileged information. As the Disclosure Motion describes in greater detail, discovery provided to defendant indicates that the government has monitored and may be continuing to monitor communications that are protected under the attorney-client privilege or the attorney work product doctrine.   The specific source of purported legal authority to record the conversations addressed in the Disclosure Motion is not known by the defendant; because the government has not provided notice of wiretapping under Title III, these communications were presumably obtained under either FISA or FAA.    Defendant's Diclosure Motion seeks disclosure of additional privileged communications and disclosure of agency minimization procedures, both of which are likely classified.

**C.    Defense Counsel Either Already Has A Clearance Or Is Willing To Submit To The Clearance Process**

Undersigned counsel was previously issued a secret-level security clearance issued in relation to another case.  Exhibit A.  Undersigned counsel confirmed in January of 2014 that her security clearance is active.  *Id*.  She was told by a court security officer that in order to allow review of classified information in case other than the case for which the clearance was originally given, the prosecutor on the current case would need to update the "Need to Know" and "Reason for Access" fields for security clearances, which vary from matter to matter.  *Id*.  John Ransom, co-counsel for Mr. Khan, contacted AUSA Ethan Knight on January 30, 2014, to inquire about obtaining a clearance.  AUSA Knight responded that neither Mr. Ransom nor Ms. Baggio needed a security

clearance in this case.  *Id.*  Ryan O'Connor, research and writing attorney for Mr. Khan, is also willing to undergo the process necessary to obtain a security clearance.  *Id.*

Therefore, one of Mr. Khan's attorneys has a security clearance that may be applied to the current case.  Mr. Khan's other attorneys are willing to submit to the process by which one obtains a security clearance.

## II.  Neither FISA Nor CIPA Justify Allowing The Government To Respond To Defendant's Disclosure Motion With *Ex Parte, In Camera* Submissions

Due process requires permitting the defense team access to classified information filed in response to defendant's Motion for Disclosure.  Any attempt to address defendant's Motion for Disclosure with an *in camera, ex parte* submission under either FISA or CIPA should be denied.

### A.  FISA Allows For Disclosure Of Classified Information To Security Cleared Defense Counsel Pursuant To A Protective Order

A court "shall" conduct *in camera* and *ex parte* review of FISA applications, orders of the Foreign Intelligence Surveillance Court (FISC), and other material necessary to evaluate the legality of a Government action when (1) the Government provides a FISA notice or when an "aggrieved person" requests discovery of "applications or orders *or other materials relating to*" electronic surveillance or physical searches pursuant to FISA and (2) the Government files an affidavit stating "that disclosure or any adversary hearing would harm the national security of the United States." 50 U.S.C. §§ 1806(f) (emphasis added); 1825(g).  However, a Court may disclose the FISA materials and FISC orders, "under appropriate security procedures and protective orders . . . where such disclosure is necessary to make an accurate determination of the legality of the surveillance" or the physical search.  50 U.S.C. § 1806(f) (electronic surveillance); 50 U.S.C. § 1825(g) (physical searches).

Here, defendant is an aggrieved person under FISA and the FAA.  50 U.S.C. § 1801(k) (defining aggrieved person, electronic surveillance); 50 U.S.C. § 1806(c) (FISA notice, electronic surveillance); 50 U.S.C. § 1821(2) (defining aggrieved person, physical surveillance). It is likely that the recorded communications discussed in the Disclosure Motion were seized under FISA or the FAA.  If so, surveillance must be conducted pursuant to certain minimization procedures. *See, e.g.,* 50 U.S.C. § 1801(h) (FISA definition of minimization), 50 U.S.C. § 1802(a)(1)(C) (FISA minimization procedures for electronic surveillance without court order); 50 U.S.C. § 1804(a)(4) (FISA requirement that minimization procedures appear in applications for court authorized electronic surveillance); 50 U.S.C. § 1805(a)(3) (FISA authorized electronic surveillance order requires finding regarding sufficiency of minimization procedures); 50 U.S.C. § 1881a(e) (FAA minimization procedures); 50 U.S.C. § 1881a(g)(2)(ii) (FAA certification requirements of minimization procedures); 50 U.S.C. § 1881a(i)(1)(a) & (2)(c) (FAA judicial review of minimization procedures).[2]  Failure to abide by those procedures creates a basis to suppress evidence or evidence derived from the surveillance.  50 U.S.C. § 1806(e)(authorizing motion to suppress if information not lawfully acquired or if surveillance was not made in accordance with order of authorization, which includes minimization procedures); 50 U.S.C. § 1825(f) (same, for physical searches).

If the Government responds to Defendant's motion to disclose with classified minimization procedures adopted per FISA or FAA or additional communications seized under FISA or FAA, then this Court would normally engage in an *in camera, ex parte* review.  In light of the facts and posture

---

[2]The FAA requires the FISC to find that orders are consistent with the Fourth Amendment, but does not direct the FISC to consider the constitutionality of other aspects of the government's surveillance.  As described in more detail in the Motion for Disclosure, recording attorney-client communications and attorney work product invokes concerns of violations of the First, Fourth, Fifth, Sixth, and Ninth Amendments.  *See* Memorandum in Support of Disclosure at 7-8.

of this case, the Court should instead permit the attorneys for defendant to examine any relevant material, including minimization procedures and the content of privileged communications intercepted by the Government, because the violation of the attorney client privilege and attorney work product privilege is relevant to gauging the lawfulness of the surveillance.

As another federal district court has concluded, permitting defense counsel with necessary security clearance to examine FISA material or FISC orders pursuant to a protective order does not risk harm to national security. *United States v. Daoud*, No. 12-CR-00723 (N.D. Ill. Jan. 29, 2914) (Memorandum Opinion and Order at 4-5; PACER docket no. 92). Thus, this Court can permit disclosure of FISA materials and FISC orders subject to a protective order consistent with procedures authorizing review of classified material by courts and cleared attorneys.

Moreover, permitting disclosure under these circumstances "is necessary to make an accurate determination of the legality of the surveillance" or the physical search. 50 U.S.C. §§ 1806(f), 1825(g). As Judge Coleman explained in *Daoud*, subjecting the Government's purported legal authority to monitor or search a criminal defendant to "the crucible of meaningful adversarial testing" is necessary to protect a criminal defendant's Sixth Amendment right to effective assistance of counsel. *Daoud*, No. 12-CR-00723 (Memorandum Opinion and Order at 5) (citing *Anders v. California*, 386 U.S. 738, 743 (1967) and *United States v. Cronic*, 466 U.S. 648, 656 (1984)). The adversarial process helps to ensure the accuracy of court rulings by presenting a court with the strongest arguments on behalf of each party. Consistent with the Sixth Amendment, the Due Process Clause of the Fifth Amendment, and with 50 U.S.C. §§ 1806(f) and 1825(g), this Court should permit security cleared defense counsel to examine the government's minimization process and the content of privileged communications intercepted by the government.

Page 6      **DEFENDANT'S MOTION FOR ORDER ALLOWING DEFENSE COUNSEL ACCESS TO OTHERWISE *EX PARTE* PROCEEDINGS PURSUANT TO FISA OR CIPA**

**B.    CIPA Allows For Disclosure Of Classified Information To Security Cleared Defense Counsel Pursuant To A Protective Order**

Congress enacted CIPA to guard against criminal defendants in possession of classified material threatening to disclose that classified material as leverage in negotiations with prosecutors. CIPA does so by requiring a district court to rule on the admissibility of the classified information before trial. *United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996). CIPA creates procedures for making that determination; CIPA does not alter the Government's discovery obligations under the Federal Rules of Criminal Procedure or *Brady v. Maryland*, 373 U.S. 83 (1963), limit a defendant's constitutional rights, or affect other rules on the admission of evidence. *United States v. Sedaghaty*, 728 F.3d 885, 903-904 (9th Cir. 2013). Instead, CIPA strikes a balance between protecting legitimate national security concerns regarding classified information and a criminal defendant's right to a fair trial. *United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005).

Here, the defendant anticipates that the government may request an *ex parte* and *in camera* review pursuant to CIPA § 4. The defendant also anticipates that the government may argue that additional, undisclosed, recorded communications and the minimization procedures employed by agencies like the Federal Bureau of Investigations (FBI) are classified and the government need not disclose them to defense counsel under CIPA § 4. Even assuming that information is classified, that argument does not justify non-disclosure (or summaries in lieu of full disclosure).[3] Disclosure of the procedures is relevant and necessary to the defense. *Sedaghaty*, 728 F3d at 904. Review of those procedures is necessary at this time for the defense to fully litigate the Motion for Disclosure. Review of the procedures also affects defense counsel's ability to represent Defendant effectively.

---

[3]    Defendant does not concede that the Government could meet its burden to establish that any purported CIPA material has been properly classified.

III.    **Conclusion**

For the reasons described herein, the defense respectfully requests an order allowing defense counsel access to any proceeding or filing the government seeks to have *ex parte* with the Court in response to defendant's Motion for Disclosure.

Respectfully submitted on April 28, 2014.


/s/ Amy Baggio
Amy Baggio
Attorney for Defendant

With Ryan O'Connor
*Research and Writing Attorney*
*Assisting On The Motion*