S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**ETHAN D. KNIGHT**, OSB #99298
**CHARLES F. GORDER, JR.**, OSB #91287
Assistant United States Attorneys
ethan.knight@usdoj.gov
charles.gorder@usdoj.gov
1000 S.W. Third Ave., Suite 600
Portland, OR  97204-2902
Telephone:  (503) 727-1000
Facsimile:  (503) 727-1117
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 3:12-CR-00659-MO |
| v. | GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR DISCLOSURE OF MONITORING OF PRIVILEGED COMMUNICATIONS, MINIMIZATION PROCEDURES AND FILTER TEAM PROTOCOL |
| REAZ QADIR KHAN, | |
| Defendant. | |

The United States of America, by S. Amanda Marshall, United States Attorney for the District of Oregon, and through Ethan D. Knight and Charles F. Gorder, Jr., Assistant United States Attorneys, hereby responds to defendant's Motion for Disclosure of Monitoring of Privileged Communications, Minimization Procedures & Filter Team Protocol, ECF No. 64.

## I.      Introduction

Defendant has moved for the disclosure of the government's monitoring of privileged communications, minimization procedures, and filter-team protocols associated with his case.

Defendant's motion is based upon the government's disclosure of a 2010 phone call between defendant and an immigration attorney as well as its disclosure of investigative material from an unrelated criminal case. These items were obtained prior to defendant's indictment. Nonetheless, defendant claims the presence of this material in his discovery proves that the government's efforts to manage potentially privileged material have been ineffective and should compel this Court to order disclosure of the government's "past and present monitoring of privileged communications and filter and taint team protocols and procedures." (Mem. in Supp. of Def.'s Mot., ECF No. 66, at 8).

For several reasons, defendant's motion should be denied. First, there is no controlling legal authority that requires disclosure of minimization procedures and filter-team protocols.[1] Second, defendant has made no showing that the government has undermined his constitutional rights such that disclosure would be an appropriate remedy. Defendant's arguments about the government's past and future use and acquisition of privileged material reveal no prejudice to defendant and are speculative. Third, the government's existing filter and taint procedures and protocols—which will be described to the Court in a classified *ex parte* filing—adequately protect against the unreasonable acquisition of privileged material. Lastly, defendant does not

---

[1] To the extent that the classified minimization procedures at issue are discoverable, they are discoverable only in accordance with the procedures set forth in the Foreign Intelligence Surveillance Act (FISA). FISA issues relating to defendant's case are separately docketed for review by this Court in defendant's motion scheduled to be filed on September 8, 2014. The government will address all FISA-related issues at that time in accordance with the procedures set forth in 50 U.S.C. Sections 1806(f) and 1825(g), including the classified minimization procedures, as they relate to the FISA collection in this matter. (Am. Case Litigation Schedule, ECF No. 74).

**Government's Response to Defendant's Motion for Disclosure of Monitoring of     Page 2
Privileged Communications, Minimization Procedures and Filter-Team
Protocol**

need the government's minimization procedures and filter-team protocols to seek a remedy based on the interception of privileged material.

## II.     Background

### a.     Attorney-Client Communications

On August 22, 2013, the government provided defendant a January 21, 2010, phone call between defendant and an attorney. Prior to the call, the government was unaware that defendant had a relationship with this attorney. The call was recorded and reviewed prior to defendant's indictment. After the call was received, it was identified as a potentially privileged communication by the Federal Bureau of Investigation and reviewed by an individual not associated with the prosecution team. Based upon this review, a substantive determination was made that the call was, in fact, not a privileged communication. The call was then shared with members of the prosecution team. Once the call was in the possession of the prosecution team it was declassified and ultimately provided to defendant in discovery. The government agrees that the January 21, 2010, call is indeed a privileged communication. There is no evidence, however, that the government's possession of the call prejudiced his case.[2]

/ / /

/ / /

---

[2] Defendant identifies one additional, potentially privileged phone call. The government is in the process of confirming the existence of any additional potentially privileged material obtained and reviewed during the course of the investigation. Such materials may be classified and may be handled or processed by a taint team without assistance from the prosecution team. The government will comply with its discovery obligations as they relate to additional material and will inform the Court and defendant once the presence of such information is confirmed and handled properly.

**Government's Response to Defendant's Motion for Disclosure of Monitoring of     Page 3
Privileged Communications, Minimization Procedures and Filter-Team
Protocol**

     **b.**     **Privileged Attorney Work Product**

There is no evidence that the government possesses or will possess "attorney work product" in his case. The government provided defendant three telephone calls between Federal Public Defender investigators working on an unrelated criminal case and defendant. (Def.'s Sealed Exs. C, D, and E, ECF No. 72). These calls were produced in discovery in accordance with Federal Rule of Criminal Procedure 16(a)(1)(B). Defendant makes no claim of privilege to these calls, nor does he have standing to complain about their interception. Rather, he relies upon them to support his position that the government presumably possesses or is likely to acquire similar material from other, unrelated criminal investigations. Beyond mere speculation, there are no facts offered to support this conclusion.

**III.**    **Argument**

     **a.**     **There Is No Legal Authority That Requires Disclosure of the Government's Minimization Procedures and Filter-Team Protocols.**

There is no legal authority that requires the disclosure of the government's monitoring of privileged communications, minimization procedures and filter-team protocols, nor does defendant cite to one. Discovery in criminal cases is controlled generally by Rule 16 of the Federal Rules of Criminal Procedure. Pretrial discovery is governed by Rule 16, the *Jencks Act* (18 U.S.C. § 3500), and *Brady v. Maryland*, 373 U.S. 83 (1963), along with cases decided thereunder. The government has, and will, comply with these obligations. Defendant does not argue that the rules of discovery entitle him to the sought-after material. In fact, Rule 16(a)(2)

/ / /

proscribes such a disclosure: The government's minimization procedures, filter-team protocols, and related decision making are protected work product.

Federal Rule of Criminal Procedure 16(a)(2) states that, "[e]xcept as Rule 16(a)(1) provides otherwise, [Rule 16] does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigation or prosecuting the case." Courts have frequently recognized that this exception to the discovery obligations of Rule 16(a)(1) is analogous to the work-product privilege set forth in Federal Rule of Civil Procedure Rule 26(b)(3). The work-product privilege in the context of civil litigation was recognized by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947). *Hickman* provides the foundation for the protection of an attorney's documents and other tangible items under Federal Rule of Civil Procedure Rule 26(b)(3), which states: "[T]he court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

The Ninth Circuit has found that Congress clearly intended that the Fed. R. Crim. P. 16(a)(2) protection of investigative materials extends beyond the work-product privilege as defined in the civil context. In *United States v. Fort*, 472 F.3d 1106, 1115 (9th Cir. 2007), the Court noted that "[a]lthough the Advisory Committee used the term 'work product' to describe the materials discoverable under Rule 16(a)(2), it purposefully defined the Rule's scope differently than that of Rule 26." *See* Fed. R. Crim. P. 16. Criminal Rule 16(a)(2) is more expansive and not only protects the mental impressions, conclusions, opinions, or legal theories

**Government's Response to Defendant's Motion for Disclosure of Monitoring of      Page 5
Privileged Communications, Minimization Procedures and Filter-Team
Protocol**

of the attorney for the government or other government agents, but includes all "reports, memoranda, or other internal government documents." *Id.*; *Fort*, 472 F.3d at 115. Rule 16(a)(2) clearly prohibits disclosure of the government's minimization procedures, filter-team protocols, and any and all related material to defendant.

In *United States v. Amlani*, 111 F.3d 705, 713 (9th Cir. 1997), the Ninth Circuit held that Rule 16(a)(2) authorized the government to withhold from discovery internal FBI logs documenting the tracking of evidence obtained during the investigation of the defendant. The court noted that "Rule 16(a)(2) clarifies that a defendant has an interest in the actual evidence in the government's control, not the government's records of that evidence." 111 F.3d at 713. *See also United States v. Spaguolo*, 549 F.2d 705 (9th Cir. 1977) (refusing to permit discovery about the government's investigation). Similarly here, the government's minimization procedures and filter-team protocols are not the subject of discovery under Rule 16(a)(2). With the evidence of the intercepted calls obtained, defendant can make whatever legal argument he wishes about a potential remedy.

   **b. There Is No Evidence of "Constitutional Concerns" That Requires Disclosure of the Government's Minimization Procedures and Filter-Team Protocols.**

Defendant broadly asserts that the government's conduct in this case "gives rise to constitutional concerns" and therefore requires disclosure of its minimization procedures and filter-team protocols. (Def.'s Mem. 7). The law does not support this sweeping conclusion. Defendant concedes that his Sixth Amendment right to counsel attaches at the time of indictment. (Def.'s Mem. 7). In this case, there is no evidence or suggestion that privileged

**Government's Response to Defendant's Motion for Disclosure of Monitoring of  Page 6 Privileged Communications, Minimization Procedures and Filter-Team Protocol**

communications have been acquired post-indictment. The privileged material in this case was generated pre-indictment, and more importantly there is no evidence of any widespread collection or dissemination of privileged communications or materials obtained pre- or post-indictment.

Notwithstanding the absence of privileged material obtained post-indictment in this case, "[a] claim of government interference with the attorney-client relationship has three elements: (1) the government was objectively aware of an ongoing, personal attorney-client relationship; (2) the government deliberately intruded into that relationship; and (3) as a result, the defendant suffered actual and substantial prejudice." *United States v. Stringer*, 535 F.3d 929, 941 (9th Cir. 2008); *accord Williams v. Woodford*, 384 F.3d 567, 584-85 (9th Cir. 2004) (Sixth Amendment violation occurs "[w]hen the government deliberately interferes with the confidential relationship between a criminal defendant and defense counsel," and that interference "substantially prejudices the criminal defendant"). None of these elements is present in defendant's case. Again, the government was unaware of an attorney-client relationship when any communications were acquired and there is no suggestion that the interception of any privileged communications resulted from a "deliberate intrusion" into the attorney-client relationship.

The defendant has also made no effort to claim—nor is there any evidence to support—the argument that the government's acquisition of attorney-client material has resulted in any prejudice. Even if this Court concludes the government has accessed privileged material, the Supreme Court has emphasized that a court must find prejudice before granting relief on a Sixth Amendment claim and must tailor any remedy to the particular prejudice found. *See generally*

**Government's Response to Defendant's Motion for Disclosure of Monitoring of   Page 7
Privileged Communications, Minimization Procedures and Filter-Team
Protocol**

*United States v. Hernandez*, 937 F.2d 1490, 1493 (9th Cir. 1991) (citing *United States v. Morrison*, 449 U.S. 361 (1981), and *Weatherford v. Bursey*, 429 U.S. 545 (1977)).  In *Morrison*, law enforcement agents met with the defendant without the knowledge or permission of her counsel and, in the course of conversation, made disparaging remarks about counsel to the defendant.  449 U.S. at 362.  The Court assumed *arguendo* that a Sixth Amendment violation occurred, but held that no relief was warranted—"much less the drastic relief" of dismissal—because the defendant had not demonstrated prejudice "of any kind . . . to the ability of her counsel to provide adequate representation in the criminal proceedings."  *Id.* at 363-64, 366-67.  The Court explained that "[c]ases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injuries suffered from the constitutional violation" and that no remedy is available if the infringement did not "ha[ve] or threaten some adverse effect upon the effectiveness of counsel's representation or produce some other prejudice to the defense."  *Id.* at 364-65.  Similarly, the Ninth Circuit has held that there is no Sixth Amendment violation absent proof of "substantial prejudice" to the defense.  *United States v. Danielson*, 325 F.3d 1054, 1069-70 (9th Cir. 2003).  "Substantial prejudice," requires proof that the government has obtained an unfair advantage, either by introducing evidence at trial obtained through Sixth Amendment interference or capitalizing on defense plans and trial strategies.  *Id.*  Nothing of the sort has occurred in this case.  Any argument supporting a finding of prejudice in defendant's case is problematically speculative.

Defendant also relies upon unsubstantiated claims of "brazen monitoring of privileged communications" as evidence of the government's apparent monitoring of privileged material in

**Government's Response to Defendant's Motion for Disclosure of Monitoring of Privileged Communications, Minimization Procedures and Filter-Team Protocol**　　　**Page 8**

this case. (Def.'s Mem. 7). Equally groundless is defendant's claim that the existence of the calls in defendant's sealed exhibits C, D, and E "is proof that the government records defense interviews with potential defense witnesses who are themselves under investigation[.]" (Def.'s Mem. 6). This is inaccurate. The government records phone calls when it is lawfully authorized to do so, and there is often the possibility that criminal investigations overlap.

Defendant suggests, however, that the "recording and dissemination practices are particularly troubling because they show the unfair benefit to a single prosecutor who has access to electronic communications of multiple targets[.]" (Def.'s Mem. 6). This claim is also inaccurate. The "dissemination" practice defendant apparently refers to is the government's discovery obligation under Rule 16(a)(1)(B). Moreover, no single prosecutor benefited from the unforeseen overlap between the investigations. Prosecutors in defendant's case were not told of the phone calls until the conclusion of the unrelated criminal case. Ultimately, the mere possibility that work product may be acquired is too speculative to raise "constitutional concerns" that would support disclosure of the government's minimization procedures or filter-team protocols.

### c. The Court Can Review the Government's Minimization Procedures and Filter-Team Protocols *Ex Parte* Without Disclosure to Defendant.

The government has provided to the Court *ex parte* a classified document describing the procedures undertaken in defendant's case to manage privileged material. This document is, in part, classified and contains work product related to the taint procedure and protocols in this case. This material is subject to the protection of Rule 16(a)(2). These materials demonstrate

that the government has adopted procedures to effectively manage privileged material that may exist.

But even if the Court accepted defendant's argument that the government's procedures have been ineffective, such a finding would be immaterial to the remedy sought by defendant—defendant does not need access to the government's minimization procedures and filter-team protocols to seek an appropriate remedy. Defendant can argue for any remedy he chooses (including dismissal) at virtually any stage of his case based upon the prosecution team's exposure to privileged materials or work product, but he does not need the government's minimization procedures or filter protocols to do so. Defendant's arguments would necessarily be predicated on the prejudice caused by the prosecution team's exposure to privileged material or work product. At this stage, the government's minimization procedures and filter-team protocols are collateral to these arguments.

## IV.   Conclusion

For the reasons stated above, defendant's motion should be denied.

Dated this 19th day of May 2014.

        Respectfully submitted,

        S. AMANDA MARSHALL
        United States Attorney


        *s/ Ethan D. Knight*
        ETHAN D. KNIGHT, OSB #99298
        CHARLES F. GORDER, JR., OSB #91287
        Assistant United States Attorneys
        (503) 727-1000