Amy Baggio, OSB #01192
amy@baggiolaw.com
Baggio Law
621 SW Morrison, Suite 1025
Portland, OR 97205
Tel:   (503) 222-9830
Fax:   (503) 274-8575

John S. Ransom, OSB #742655
john@ransomblackman.com
Ransom Blackman LLP
1001 SW 5th Ave Ste 1400
Portland OR  97204
Tel:   (503) 228-0487
Fax:   (503) 227-5984

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:12-cr-659-MO |
| Plaintiff, | |
| v. | REPLY TO RESPONSE TO MOTION FOR DISCLOSURE OF MONITORING OF PRIVILEGED COMMUNICATIONS, MINIMIZATION PROCEDURES & FILTER TEAM PROTOCOL |
| REAZ QADIR KHAN, | |
| Defendant. | |

Mr. Khan provides this Reply to the government's Response (CR-80) to his Motion for

Disclosure of Monitoring of Privileged Communications, Minimization Procedures & Filter Team

Protocol (CR-64, hereafter "Motion") and Memorandum in Support (CR-66, hereafter "Memo"). The government response warrants a reply in three respects.

I. The Government's "Background" Section Of Its Response Provides Important Information For This Court's Consideration

    A. Government Concession: Its Process Did Not Work

Regarding the phone call between Mr. Khan and his attorney in January of 2010, the government states: "After the call was received, it was identified as a potentially privileged communication by the Federal Bureau of Investigation and reviewed by an individual not associated with the prosecution team." "Based on this review, a substantive determination was made that the call was, in fact, not a privileged communication." The call was "then shared with members of the prosecution team" and eventually distributed to the defendant as discovery. Response at 3. The Response goes on to concede: "The government agrees that the January 21, 2010, call is indeed a privileged communication." *Id.* This is an important concession. Whatever the minimization procedures, and whatever other oversight processes might exist, the processes failed and privileged communications were disclosed to the prosecution team.

The government does not state who at the Federal Bureau of Investigation (FBI) identified the call as potentially privileged;[1] whether the second-level "individual" reviewer was an employee of the FBI, Office of General Counsel,[2] or of the United States Attorneys Office (USAO); nor

---

[1] Regarding who initially identified the call as potentially privileged, the Response refers generally to the FBI. By stating that the call was later shared with the prosecution team, the government has implied that the case agent was not the individual conducting initial review. If the case agent was involved in the initial review, he appears to be tasked with both conducting initial privilege review and investigating the case. This would be another example of an improper review process.

[2] At the March 19, 2014, Privacy and Civil Liberties Oversight Board hearing regarding the FISA Amendments Act (FAA) (hereafter PCLOB), General Counsel for the National Security Agency stated that beyond minimization procedures, employees were obligated to notify the Office of General

whether this review occurred as part of the agency minimization procedures or pursuant to a filter team process conducted by the FBI or within the USAO. Response at 3.

Because the government was unable to correctly identify privileged communications and because any minimization and filter team processes were ineffective in preventing the dissemination of privileged communications to the prosecution team, Mr. Khan is justified in seeking additional information. Specifically, he seeks disclosure of minimization and filter team procedures, including any documents or logs in which a substantive determination was made that the information was or was not privileged, by whom, and when. Disclosure of this information is required to assess both the flaws in the process and the extent of the taint.

>	B.	The Government Does Not Deny It May Possess Additional Privileged Communications

Regarding other privileged communications in the government's possession, the government states that it is in the process of identifying privileged materials in its possession, including a second attorney-client phone call. Response at 3, n.2. The defense submits on information and belief that a number of emails and telephone calls between Mr. Khan and another attorney took place in 2012 and involved the subject matter of the current indictment.[3] Mr. Khan asks the Court to direct the prosecution team to search for and disclose the existence of any privileged communications in its possession, as well as disclose access by any member of the prosecution team to such privileged

---

Counsel whenever a privileged communication was intercepted to ensure the sanctity of attorney-client communications. PCLOB at 87-88. The full hearing transcript is available online at: http://www.pclob.gov/Library/Meetings-Events/2014-March-19-Public-Hearing/19-March-2014_Public_Hearing_Transcript.pdf. (Last visited May 26, 2014.)

[3]If the Court would like additional information regarding the basis for the defense belief that additional privileged communications exist during the relevant time period, Mr. Khan offers to do so *ex parte* and under seal.

Page 3    REPLY TO RESPONSE TO MOTION FOR DISCLOSURE OF MONITORING OF PRIVILEGED COMMUNICATIONS, MINIMIZATION PROCEDURES & FILTER TEAM PROTOCOL

communications. If the additional communications are in the possession of a filter team, Mr. Khan asks than any disclosures of these communications be provided to him *ex parte* and under seal, to avoid additional disclosures of privileged information to the prosecution team.

Lastly, it is worthy to note that Mr. Khan is out of custody and in regular telephone and email communication with his defense team. Therefore, an additional risk of ongoing monitoring of privileged communications exists in this case.

### C. The Government Fails To Appreciate The Threat To Mr. Khan's Privileged Attorney Work Product As Illustrated By The Unrelated Case Interviews

The government fails to recognize the import of the recordings of Mr. Khan and the Federal Defender investigators in the pending Motion for Disclosure. The government states: "The government records phone calls when it is lawfully authorized to do so, and there is often the possibility that criminal investigations overlap." Response. at 9. This statement illustrates the problem: there must be a court-reviewed system in place to ensure that monitoring of individuals with overlapping investigations does not result in disclosure of privileged communications to the prosecution team.

The Response further states the prosecutor was "not told of the phone calls until the conclusion of the unrelated criminal case." Response at 9. The unrelated criminal case is not concluded; the defendant in the unrelated matter has not yet been sentenced; in fact, the defendant in the unrelated matter has a pending motion for new trial. "Applied in the context of a criminal prosecution, finality is normally defined by the imposition of the sentence." *Flynt v. Ohio*, 451 U.S. 619, 620 (1981) (*per curiam*). A prosecutor should not be given evidence in one case that allows him access to privileged defense strategy in another.

The direct threat of crossover in this case is not speculative. A number of potential defense witnesses located in the United States have been subjected to federal government investigation. The defense must be able to conduct its investigation and interview witnesses without fear that privileged work product will be communicated to the prosecution team by virtue of surreptitious monitoring of those potential defense witnesses.

The defense also needs to interview witnesses overseas. The FAA allows the government to monitor communications of individuals overseas when a significant purpose of the acquisition is to obtain foreign intelligence information. *Clapper v. Amnesty Intern. USA,* 133 S. Ct. 1138, 1156-57 (2013) (Breyer, J., dissenting) (describing reduced showing required for surveillance order under FAA as compared to FISA). The overseas person need not be a target of a criminal investigation, but need only be likely to communicate foreign intelligence information. *Id.* United States persons' communications may be incidentally collected and later disseminated if that U.S. person communicates with a foreign target. *Id. See also* PCLOB at 12 (Robert Litt, General Counsel, Office of the Director of National Intelligence, describing "incidental collection" of US persons' communications if they are in contact with "valid foreign targets."); PCLOB at 102-104 (Mr. Litt claiming communications of US persons incidentally collected under FAA are legally acquired and purged only if the communication does not contain foreign intelligence information, otherwise the information is kept if useful and disseminated as appropriate); PCLOB at 55 (Brad Wiegmann, Deputy Assistant Attorney General, National Security Division, Department of Justice, describing how communications *about* a targeted selector are collected under FAA, not just communications to or from a targeted selector, and may include incidental US person communications).

Moreover, as explained in *Clapper* by Justice Breyer in his dissent regarding the Court's conclusion as to standing:

> [T]he plaintiffs have a strong motive to engage in, and the Government has a strong motive to listen to, conversations of the kind described. A lawyer representing a client normally seeks to learn the circumstances surrounding the crime (or the civil wrong) of which the client is accused.
> ...
> At the same time, the Government has a strong motive to conduct surveillance of conversations that contain material of this kind. The Government, after all, seeks to learn as much as it can reasonably learn about suspected terrorists (such as those detained at Guantanamo), as well as about their contacts and activities, along with those of friends and family members.

133 S. Ct. at 1159. This is precisely the predicament in which Mr. Khan's defense team finds itself. And unlike the plaintiffs in *Clapper*, the threat of communication of privileged information in Mr. Khan's case is clear and present. This threat of disclosure of privileged information is made even stronger by the dissemination practices for which the government has lobbied in its national security investigations.

The Foreign Intelligence Surveillance Act (FISA), particularly as amended by the USA PATRIOT Act, allows for an open flow of information between intelligence and law enforcement groups within the Executive Branch. *In re Sealed Case*, 310 F.3d 717, 727-33 (FISCR 2002); PCLOB at 17 (Mr. Weigmann stating interagency dissemination of FAA-seized information permitted if involves evidence of crime); PCLOB 102-104 (Mr. Litt & Mr. Weigmann discussing dissemination of incidentally collected communications if useful).

The problem with the government's free flow of information system stems from the fact that the defense must be permitted to communicate with people overseas without the fear that the communications will be recorded and disseminated to individuals involved in the current case. Accordingly, the Court should order disclosure of past and present monitoring, as well as whatever

minimization or filter protocol materials exist that are supposed to prevent an occurrence such as that which took place in the unrelated case, whether these procedures pertain to traditional FISA-surveillance of local targets or FAA-surveillance of targets overseas.

II.     Materials Sought Are Discoverable

The government asserts intercepted privileged communications, minimization procedures, and filter team protocols are not discoverable. Response at 4-6. The government is wrong. Mr. Khan's recorded, privileged, communications (including phone calls or emails) are discoverable pursuant to Fed. R. Crim. P. 16(a)(1) subpart (A) (oral statements of defendant) and (B) (written statements of defendant). The minimization procedures and filter team protocol are discoverable under Fed. R. Crim. P. 16(a)(1)(E), which requires disclosure of "documents" "if the item is within the government's possession, custody, or control and" "the item is material to preparing the defense[.]"

Regarding the government's unprecedented claims that the minimization procedures, filter team protocol, and "any related decision making" constitute protected work product, thus precluding disclosure under Rule 16(a)(2) (Response at 4-6), the government is incorrect. The requested materials are not privileged work product.

A.     Minimization Procedures Are Not Privileged Work Product

In support of its claim that minimization procedures are privileged work product, the government cites two easily distinguishable cases. Response at 6 (citing *United States v. Amlani*, 111 F.3d 705 (9th Cir. 1997) and *United States v. Spaguolo*, 549 F.2d 705 (9th Cir. 1977)). First, neither case cited by the government holds that minimization procedures are privileged. Second, in both cases the defendants failed to establish materiality. *Amlani*, 111 F.3d at 713 (failed to show how internal

tracking logs were material); *Spaguolo*, 549 F.2d at 713 (defendant's request a "fishing expedition").

Minimization procedures are an integral part of any FISA application and are designed to ensure communications are lawfully intercepted and not unlawfully retained. 50 U.S.C. § 1801(h) (defining minimization procedures); 50 U.S.C. §1804(a)(4)(minimization procedures are part of application for order); 50 U.S.C. §1805(a)(3) (issuance of order requires review of minimization procedures); 50 U.S.C. §1806(e)-(f)(lawfulness of minimization procedures is basis for motion to suppress). *See also United States v. Rosen*, 447 F. Supp. 2d 538, 550-51 (E.D.Va. 2006) ("Congress intended these [FISA] minimization procedures to act as a safeguard for U.S. persons at the acquisition, retention and dissemination phases of electronic surveillance and searches."). FISA explicitly provides for disclosure of documents underlying FISA intercepts. 50 U.S.C. § 1806(f) ("court may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials ... where such disclosure is necessary to make an accurate determination of the legality of the surveillance."). Because even FISA itself contemplates disclosure of the FISA application, order, and other materials related to surveillance, the government's claim that the FISA minimization procedures constitute privileged work product should be flatly rejected.[4]

The government also argued that if the minimization procedures are discoverable, they are discoverable only pursuant to FISA and FISA litigation in this case is scheduled to take place later this year. Response at 2, n. 1. Once again, the government misses the point of the current Motion

---

[4] The NSA disclosed publicly its 2011 FAA minimization procedures in August of 2013. Regarding the disclosure, the Director of National Intelligence made no claim that minimization procedures constitute work product. He instead stated the disclosure of this, and other materials, was aimed at "ensuring that these extraordinary intelligence activities are conducted responsibly and subject to the rule of law." The Director's full statement is available at http://www.fas.org/irp/news/2013/08/dni082113.pdf. (Last visited May 26, 2014.)

for Disclosure. The litigation scheduled to take place later this year relates to *Motions to Suppress Evidence* collected pursuant to FISA/FAA/EO12333/etc. and is expected to focus on statutory violations and facial/as-applied challenges. The current Motion requests discovery of information related to monitoring practices and the handling of privileged information. Government access to privileged communications is a threat that cannot wait. Disclosure should occur now.

B.    The Filter Team Protocol Is Not Privileged Work Product

The government argues that any filter team protocol is privileged work product. Response at 5-6. Such a position is untenable, particularly in light of the record underlying this Motion and in this district where the sufficiency of filter team protocols has been the subject of robust litigation.

As an initial matter, filter team protocols have been routinely filed in the public record. *See United States v. Pedersen,* 12-cr-431-HA, at CR-416 (filter team instructions admitted as government exhibit); *United States v. Scott,* 12-cr-246-HA-2 at CR-67-1(government offers filter team instructions as exhibit); *United States v. Bettencourt et al.*, 11-cr-60142 (CR-71) (jointly proposed filter team protocol); *United States v. Naithani*, 09-cr-00444 (CR-98) (defendant moving to continue filter team litigation deadlines, including as an exhibit a letter delineating USAO filter team process).

Not only are protocols publicly filed, litigation as to the sufficiency of filter teams is conducted as an adversarial process. For example, in *Pedersen,* the District Court was involved in many rounds of litigation relating to possible improper monitoring and review of privileged communications. *Pedersen,* 12-cr-431-HA, CR-279 (Defendant's Emergency Motion for Order to Protect Confidentiality of Attorney-Client Communications, CR-291 (Order granting in part and denying in part Defendant's Emergency Motion). After the conclusion of extended hearings regarding the disclosure of privileged communications to the prosecution team, the *Pedersen* Court

made a finding of bad faith regarding the prosecution team's access to privileged defense communications. CR-415 (Minute Order, finding bad faith by prosecution team). The Court ultimately found: "The communications submitted should clearly have been treated as privileged legal communications between Pedersen and his defense team." CR-422, Amended Order at 2. The Court continued: "The interception of such privileged communications may cause prejudice to the defendant even if the prosecution team does not gain any strategically important information." *Id.* As exemplified by the *Pedersen* case, discovery and a full adversarial proceeding is often necessary to fully evaluate the effectiveness of filter team processes and to determine the extent of disclosure of privileged communications. *See also United States v. Scott,* 12-cr-246-HA-2, CR-52, CR-53, CR-57, CR-65 through CR-74 (filter team litigation); CR-75 (Court modified USAO proposed filter team instructions in three particulars); CR-264 & CR-265 (Defendant renewed objections to filter team protocol: "Since the Court's ruling on Mr. Scott's motion, new information about how the Filter Team is operating demonstrates that the government's filter team procedure is fundamentally flawed and, as currently established, leads to an intentional intrusion into Mr. Scott's privileged communications.").

These examples illustrate that filter team protocols are not generally treated as work product and may be the subject of important litigation. Mr. Khan has established that both minimization procedures and filter team protocol are ineffective because the prosecution team is in possession of at least one privileged communication. As exemplified in *Pedersen*, the legal sufficiency of filter team protocol is best assessed in the context of adversarial proceedings with the Court ruling on the sufficiency of procedures designed to ensure the defendant's constitutional rights are protected.

III.     Mr. Khan Seeks Disclosure Of Information To Both Assess Past Constitutional Violations And To Secure His Rights In The Future

The government argues extensively that despite evidence of access to privileged communications, disclosure of related information is not the appropriate remedy. Instead, the government argues, Mr. Khan should rely on the evidence of possession of privileged communications in support of a motion to suppress or motion to dismiss. Response at 6-9. The government's argument misconstrues the pending motion.

Mr. Khan seeks disclosure of any additional seized, privileged, communications in the government's possession. Motion at 2; Memo at 8-9. Mr. Khan also seeks disclosure of information related to the minimization procedures and any filter team protocol utilized by the government.[5] Motion at 2; Memo at 8-9. The purpose of the request for disclosure is two-fold. First, only after the full disclosure of monitoring will Mr. Khan know the extent of the government's violations and only then can assess what motions are appropriate. Second, disclosure is necessary to allow Mr. Khan to take affirmative steps to protect his privileges in the future.

IV.     Conclusion

For the reasons set forth in this Reply and the original Motion and Supporting Memorandum, the Court should order disclosure of the materials sought by the defense.

Respectfully submitted on May 26, 2014.

    /s/ Amy Baggio
Amy Baggio, OSB #01192
503-222-9830
Of Attorneys for Defendant Khan

---

[5] Defendant's Motion for Access (CR-68) and Reply to Response to Motion for Access (CR-83) provide a description of the process allowing access under CIPA and FISA and the facts in this case supporting disclosure to defense counsel. Motion for Access at 4-7; Reply to Access Motion at 5-7.

Page 11    REPLY TO RESPONSE TO MOTION FOR DISCLOSURE OF MONITORING OF PRIVILEGED COMMUNICATIONS, MINIMIZATION PROCEDURES & FILTER TEAM PROTOCOL