Amy Baggio, OSB #01192
amy@baggiolaw.com
Baggio Law
621 SW Morrison, Suite 1025
Portland, OR 97205
Tel:    (503) 222-9830
Fax:    (503) 274-8575

John S. Ransom, OSB #742655
john@ransomblackman.com
Ransom Blackman LLP
1001 SW 5th Ave Ste 1400
Portland OR    97204
Tel:    (503) 228-0487
Fax:    (503) 227-5984

Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No. 3:12-cr-659-MO** |
| Plaintiff, | |
| v. | **MOTION TO DISMISS THE INDICTMENT** |
| **REAZ QADIR KHAN,** | |
| Defendant. | |

The defendant, Reaz Qadir Khan, through counsel, hereby moves to dismiss the indictment (CR-1) because the charging instrument violates Fed. R. Crim. P. 7, due process and the right to present a defense as guaranteed by the Fifth Amendment, and the right to a fair trial as guaranteed by the Sixth Amendment. This motion is based on the accompanying Memorandum, filed herewith.

Respectfully submitted on September 15, 2014.


 /s/ Amy Baggio
Amy Baggio, OSB #01192
503-222-9830
Of Attorneys for Defendant Reaz Khan

Amy Baggio, OSB #01192
amy@baggiolaw.com
Baggio Law
621 SW Morrison, Suite 1025
Portland, OR 97205
Tel:    (503) 222-9830
Fax:    (503) 274-8575

John S. Ransom, OSB #742655
john@ransomblackman.com
Ransom Blackman LLP
1001 SW 5th Ave Ste 1400
Portland OR   97204
Tel:    (503) 228-0487
Fax:    (503) 227-5984

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:12-cr-659-MO |
| Plaintiff, | |
| v. | MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT |
| REAZ QADIR KHAN, | |
| Defendant. | |

## I.    Introduction

Mr. Khan is charged in a single-count indictment alleging he conspired with Ali Jaleel to provide material support violation of 18 U.S.C. §2339A (the material support statute). (Exhibit A, Indictment.)    This memorandum is filed in support of defendant's motion to dismiss the indictment.

### A.  The Charge: 18 U.S.C. §2339A

The material support statute prohibits providing support or resources, knowing or intending that the resources are to be used in preparation for, or in carrying out, any one of over forty cross-referenced offenses.    18 U.S.C. §2339A.    The cross-referenced offense charged in the indictment in Mr. Khan's case is conspiracy to kill, maim, or kidnap in a foreign land. 18 U.S.C. §956(a).[1]

Section 2339A provides that the government may charge a defendant with directly providing material support to another person, or conspiring to do so.    In this case, Mr. Khan was charged with conspiring with Ali Jaleel and others known and unknown to the grand jury to provide material support in furtherance of a conspiracy to kill, maim, or kidnap in a foreign land. (CR-1.)

The statute carries a maximum sentence of 15 years' imprisonment unless death resulted from the material support, in which case the statutory maximum increases to life. 18 U.S.C. §2339A.

_____

[1]Although the indictment charges both subsections of 18 U.S.C. §956 (Ex. A), in the Government's Response to Mr. Khan's Motion to Compel Discovery, filed under seal, the government stated that it has elected to proceed only on the 18 U.S.C. §956(a) (conspiracy to kill, maim or kidnap abroad) theory and has abandoned the §956(b) (conspiracy to destroy property in a country with which the U.S. is at peace) theory.    Accordingly, this memorandum focuses solely on §956(a).

### B. The Indictment Insufficiencies

As examined in this Memorandum, Mr. Khan raises three objections to the indictment.  First, the indictment is vague in violation of Fed. R. Crim. P. 7 and Due Process.  Second, the indictment impermissibly charges a double-layered conspiracy in violation of Due Process.  Third, the indictment as charged cannot support a maximum sentence of lifetime incarceration and should be dismissed due to vagueness and lack of notice as to the available punishment.

## II.    Argument

### A. Count One Is Impermissibly Vague In Violation Of Due Process And Fed. R. Crim. P. 7

Federal Rule of Criminal Procedure 7(c)(1) provides that an indictment "shall be a plain, concise and definite statement of the essential facts constituting the offense charged." With regard to what Due Process requires in a charging instrument, the Supreme Court explained:

> [A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.' 'Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.'

*Hamling v. United States*, 418 U.S. 87, 117-18 (1974) (internal citations omitted); *see also United States v. Livingston*, 725 F.3d 1141, 1145 (9th Cir. 2013) (same, citing *Hamling & Bohonus*);

*United States. v. Huping Zhou*, 678 F.3d 1110, 1113 (9th Cir. 2012) ("An indictment or information must meet the requirements of both the Due Process Clause and Federal Rule of Criminal Procedure 7." (citing *Hamling*)); *United States v. Bohonus*, 628 F.2d 1167, 1173 (9th Cir. 1980) (indictment must provide description of charges sufficient to (1) enable defendant to prepare his defense; (2) ensure defendant that he is being prosecuted on the basis of facts presented to the grand jury; (3) enable him to plead double jeopardy against a later prosecution; and (4) inform the court of the facts alleged so that it can determine the sufficiency of the charge.).

Count One alleges Mr. Khan and Mr. Jaleel participated in a conspiracy to provide material support, knowing and intending the support be used in preparation for, or in carrying out, the cross-referenced predicate count, a conspiracy to kill, maim or kidnap in a foreign land.   Because the government charged Mr. Khan with conspiring to violate §2339A, this means that §2339A is a predicate offense.   However, due to the structure of the material support statute, the cross referenced §956(a) is another predicate, the predicate of the §2339A conspiracy.

As charged in Mr. Khan's case, Count One is impermissibly vague because it does not satisfy *Hamling*'s pleading requirements. The indictment fails to adequately notify the defendant of the nature or members of the cross-referenced §956(a) predicate conspiracy, or of which allegations in the indictment relate to which of the two conspiracies.   Stated simply: One cannot read the indictment and understand which conduct and actors are alleged to constitute the §2339A conspiracy and which constitute the §956 conspiracy. These deficiencies violate Due Process and prevent the defendant from being able to

adequately investigate and prepare his defense.    *See Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) ("The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the [government's] accusations.");

The aforementioned vagueness is particularly important in this case for two reasons. First, as examined below in section II.B, distinctions between the primary §2339A conspiracy and the cross-referenced §956(a) conspiracy are crucial because the government has attempted to charge a double-layered conspiracy. Second, as examined in section II.C, distinctions regarding alleged co-conspirators and conduct allegedly attributable to them is crucial when the statutory maximum increases to life if death results from the material support.

In sum, due to the lack of definiteness and conflating of allegations of conduct between the two conspiracies in the indictment, Mr. Khan (1) cannot adequately prepare his defense; (2) he cannot ensure he is being prosecuted on the basis of facts presented to the grand jury or how the grand jury understood them; (3) is unable to plead double jeopardy against a later prosecution; and (4) the Court cannot, as addressed below, determine the sufficiency of the charge or the maximum punishment.    These violations of Due Process and Rule 7 cannot stand; accordingly, the indictment should be dismissed.

### *B.* The Indictment Impermissibly Charges A Double Conspiracy With A Single Objective, Creating A Vague Charge In Violation Of Due Process

As referenced in the Introduction above, the material support statute may be charged as involving direct support, or a conspiracy to provide support.    Also set out above, the government may charge a violation of the material support statute in reference to any one of

over forty different cross referenced predicate offenses. In this case, the government charged Mr. Khan with *conspiring* to provide material support with the knowledge and intent that the support be used in furtherance of a *conspiracy* to kill, maim, or kidnap in a foreign land.

Conspiracy is an inchoate crime that does not require completion of the substantive crime. *United States v. Iribe,* 564 F.3d 1155, 1160-61 (9th Cir. 2009); *see also Iannelli v. United States*, 420 U.S. 770, 778 (1975) ("This Court repeatedly has recognized that a conspiracy poses distinct dangers quite apart from those of the substantive offense."). The crime of conspiracy "comprises three elements: '(1) an agreement to engage in criminal activity, (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the substantive crime.'" *Iribe*, 564 at 1161 (quoting *United States v. Sullivan*, 522 F.3d 967, 976 (9th Cir.2008)); see also *Braverman v. United States*, 317 U.S. 49 (1942) (conspiracy is "the agreement or confederation of the conspirators to commit one or more unlawful acts."). "A single agreement to commit several crimes constitutes one conspiracy, [but] multiple agreements to commit several crimes constitute multiple conspiracies." *United States v. Broce*, 488 U.S. 563, 570-71 (1989). The *Broce* Court explained: "We held in *Braverman*…that '[t]he gist of the crime of conspiracy as defined by the statute is the agreement ... to commit one or more unlawful acts,' from which it follows that 'the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects.'" *Id.* at 570.

As a general matter, allegations of conspiracies to conspire pose a threat to due process. Professor Ira P. Robbins, *Double Inchoate Crimes*, 26 HARV.J. ON LEGIS. 1 (Winter

1989) (hereafter cited as "Robbins") *See also United States v. Edmund*, 746 F. Supp. 200, 204 (D.D.C. 1990) (""[A] conspiracy to conspire' . . . would not be an offense under even the most expansive view of conspiracy law."). In the context of "double inchoate" offenses, Professor Robbins identifies two principal grounds of objection to such offenses: (1) "logical absurdity"; and (2) a due process notice problem. The former concentrates on the logical flaws in the conceptual framework of "double inchoate" offenses, the latter, on the inadequate notice that multi-level inchoate offenses provide with respect to just what conduct crosses the line between lawful and criminal behavior. Both are at issue here.

"For inchoate crimes, th[e] special mental element is an intent to effect the consequences or ultimate harm that is proscribed by the completed object crime." *Robbins*, at 8 n. 15. *See also id.* at n. 14 ("[t]he ultimate harm that is associated with conspiracy . . . is the intent to commit some other crime"). Thus, "defendants do not conspire or solicit another to attempt to commit a crime; rather, they act with the intention of committing the completed offense itself." *Id.* at 72. The thrust of the "logical absurdity" objection is that the piling of inchoate offenses atop one another "raise[s] the possibility of regression of liability to merely preparatory acts," *id.*, or, in other words, that it "impart[s] criminal liability to acts so removed from the ultimate offense as to qualify as *mere preparation*—that is, acts to which a court cannot impute a fully formed intent." *Id.* at 65 [footnote omitted] (emphasis added).

Although the Ninth Circuit has not yet considered §2339A and §956(a) charged together as a double layered conspiracy, the Fourth Circuit has. In *United States v. Khan*, 461 F.3d 477 (4th Cir. 2006), the defendants were charged with approximately forty different offenses, including a charge of conspiring to provide material support (§2339A) in

furtherance of a conspiracy to kill abroad (§956(a)).    The *Khan* defendants claimed that the indictment was invalid because Count Five charged a §2339A conspiracy to provide material support in furtherance of a §956 conspiracy to kill, maim or kidnap in a foreign land.    *Id.* at 492.    The *Khan* Court rejected the "conspiracy to conspire" challenge based on the allegations in that particular case, finding:

> Courts have recognized that one conspiracy can serve as the predicate for another conspiracy when the "[overarching] conspiracy and the predicate conspiracy are distinct offenses with entirely different objectives." *United States v. Pungitore*, 910 F.2d 1084, 1135 (3rd Cir.1990); *see also United States v. Ruggiero*, 726 F.2d 913, 918 (2nd Cir.1984) (holding that conspiracies can serve as predicate acts for a RICO conspiracy); *United States v. Brooklier*, 685 F.2d 1208, 1216 (9th Cir.1982) (same). In Count Five, the conspiracy to provide material support to terrorism represents a distinct offense with different objectives from the predicate conspiracy to kill a person. . . . Therefore, the underlying conspiracies may properly serve as predicates for the overarching conspiracies alleged.

*Id.*    The *Khan* decision does not provide an extensive analysis of these complex issues, nor is it controlling authority on this Court.    However, of relevance from *Khan* is the fact that intricate to the court's holding in *Khan*, the material support conspiracy in that particular case clearly set out two conspiracies with two separate objectives.    In light of the vague indictment in this case, no such similar conclusion may be drawn.

The ambiguity in Mr. Khan's indictment is highlighted by the fact that he is charged with conspiracy to provide material support for another conspiracy, but the cross referenced conspiracy is not charged as a separate count in the indictment.    *Compare Brooklier*, 685 F.2d at 1214 (Count 1 charged RICO conspiracy cross-referencing Hobbs Act; Counts 3-5 charged Hobbs Act offenses).    When the cross-referenced conspiracy is not charged as a standalone offense, and when the indictment fails to adequately describe the two separate

conspiracies, the two conspiracies may impermissibly blend into one. This distinction makes a dramatic difference when the government claims a death resulted from the material support.[2]  In sum, the double layered conspiracy as charged in this case violates Due Process and cannot stand.   The indictment should be dismissed.

### C. The Indictment Should Be Dismissed As Impermissibly Vague In Reference To The Potential Statutory Maximum, Or In The Alternative, The Court Should Find That The Maximum Sentence Based On The Indictment Is 15 Years

The government has alleged in its papers and represented in open court that, if convicted, Mr. Khan faces a maximum sentence of lifetime incarceration. The indictment fails to support the government's belief because the indictment does not allege the material support resulted in death.

As held by the Supreme Court in *Apprendi*: "Just as the circumstances of the crime and the intent of the defendant at the time of commission were often essential elements to be alleged in the indictment, so too were the circumstances mandating a particular punishment."  *Apprendi v. New Jersey*, 530 U.S. 466, 480 (2000).

Mr. Khan recognizes that the indictment references the alleged death by suicide of Jaleel (Exhibit A, paragraph A.3) and the May 27, 2009, deaths of approximately 30 people (Exhibit A, paragraph A.13.s).  Importantly, however, the indictment does not claim that Mr. Khan's alleged support resulted in the death of any person. Indeed, the indictment alleges "KHAN would provide Jaleel financial assistance so that Jaleel could attend a training camp in preparation for an attack *such as* the May 27, 2009, attack in Lahore, Pakistan[.]"

---

[2]  There was no death enhancement alleged in the Fourth Circuit's *Khan* case.

(Exhibit A, paragraph A.11) (emphasis added).   Perhaps even more importantly, in the indictment's section entitled "The Conspiracy", paragraph 7 provides an explicit description of the conspiracy in which it appears to allege Mr. Khan's direct involvement:

> Beginning no later than December 14, 2005, and continuing through June 2, 2009, in the District of Oregon and elsewhere, REAZ QADIR KHAN conspired with Ali Jaleel, and others both known and unknown to the Grand Jury, to provide material support and resources, as that term is defined in 18 U.S.C. Section 2339A(b), and to conceal and disguise the nature, location, source, and ownership of such material support and resources, knowing and intending that they were to be used in preparation for and in carrying out a violation of Title 18, United States Code, Section 956 (conspiracy to kill, maim, or kidnap persons or damage property in a foreign country).

Exhibit A, paragraph A.7.   There is no allegation in this paragraph (nor in the introductory paragraphs 1-5 cross referenced in the indictment's paragraph 6) that Mr. Khan's support resulted in the death of any person.

Comparison to another indictment in which the government alleged material support of terrorists resulting in death is helpful.   In *United States v. Ahmed Abu Khatallah*, 1:14-cr-00141-CRC (D.D.C.), both the title of the indictment ("Conspiracy to Provide Material Support and Resources to Terrorists *Resulting in Death*") (emphasis added) and the paragraph describing the alleged conspiracy make clear that grand jury found the alleged conspiracy resulted in death.   (Exhibit B, Khatallah indictment).   The paragraph describing the conspiracy resulting in death in Khatallah provides:

> Beginning on a date unknown to the Grand Jury but no later than on or about September 11, 2012, and continuing until on or about September 12, 2012, in Libya, that is, outside the jurisdiction of any particular state or district, but within the extraterritorial jurisdiction of the United States, and pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia, defendant AHMED ABU

KHATALLAH, also known as, Ahmed Mukatallah, did knowingly and intentionally conspire and agree with other conspirators, known and unknown to the Grand Jury, to provide material support and resources to terrorists, that is, personnel including himself and others, as defined in Title 18, United States Code, Section 2339A(b)(1), knowing and intending that the material support and resources were to be used in preparation for and in carrying out a violation of Title 18, United States Code, Section 930(c), Killing a Person in the Course of an Attack on a Federal Facility Involving the Use of a Firearm and a Dangerous Weapon, and a violation of Title 18, United States Code, Section 844(f), Maliciously Damaging and Destroying U.S. Property by Means of Fire and an Explosive, *and this offense resulted in death*.

Exhibit B (emphasis added).    Based on the basic notions of Due Process recognized in *Hamling* and Sixth Amendment guarantees in *Apprendi*, the indictment does not support a finding that the statutory maximum available to the government is lifetime incarceration.

The Court should dismiss the indictment as vague in violation of Due Process as to the possible sentence allowed, or in the alternative, make an express finding that the maximum sentence available is 15 years.

## III.    Conclusion

The indictment in this extremely serious case is unconstitutionally vague as to the various conspiracies and conduct attributable to the various conspiracies, charges an impermissible double-layered conspiracy, and is unclear as to the statutory maximum.    The indictment should be dismissed.

Respectfully submitted on September 15, 2014.


  /s/ Amy Baggio
Amy Baggio, OSB #01192
503-222-9830
Of Attorneys for Defendant Reaz Khan

Exhibit A:

*US v. Khan,* 3:12-cr-00659-MO

Indictment

(CR-1)

UNITED STATES DISTRICT COURT **UNDER SEAL**

DISTRICT OF OREGON

PORTLAND DIVISION

FILED 27 DEC '12 16:50 USDC-ORP

**3'12 -CR- 659** ㅏ-. **MO**

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. |
| v. | **INDICTMENT** |
| **REAZ QADIR KHAN,** | 18 U.S.C. § 2339A |
| Defendant. | **UNDER SEAL** |

### THE GRAND JURY CHARGES:

### COUNT ONE
**Conspiracy to Provide Material Support to Terrorists**

The Grand Jury charges:

**Introductory Allegations**

A.     At all times relevant to this indictment:

1.     Defendant **REAZ QADIR KHAN** is a naturalized United States citizen residing in the Portland, Oregon area;

2.     Ali Jaleel is an unindicted co-conspirator. Jaleel was a Maldivian national who resided outside of the United States;

3.     Jaleel died while participating in a suicide attack on the Inter-Services Intelligence (ISI) Headquarters in Lahore, Pakistan on May 27, 2009;

4.     "Person A" is a naturalized United States citizen residing in the Los Angeles, California area and an acquaintance of **KHAN**'s;

5.   "Person B" is an individual residing in Karachi, Pakistan; and

**The Conspiracy**

6.   The Grand Jury realleges and incorporates by reference paragraphs 1 through 5 of this Indictment.

7.   Beginning no later than December 14, 2005, and continuing through June 2, 2009, in the District of Oregon and elsewhere, **REAZ QADIR KHAN** conspired with Ali Jaleel, and others both known and unknown to the Grand Jury, to provide material support and resources, as that term is defined in 18 U.S.C. Section 2339A(b), and to conceal and disguise the nature location, source, and ownership of such material support and resources, knowing and intending that they were to be used in preparation for and in carrying out a violation of Title 18, United States Code, Section 956 (conspiracy to kill, maim, or kidnap persons or damage property in a foreign country).

**Manner and Means of the Conspiracy**

8.   **KHAN** would use email and intermediaries to provide advice and financial assistance to Jaleel and his family;

9.   **KHAN** would provide Jaleel with advice intended to assist him in his efforts to travel undetected from the Maldives and train to commit violent jihad;

10.   **KHAN** would use coded language when he communicated with Jaleel in order to avoid detection;

11.   **KHAN** would provide Jaleel financial assistance so that Jaleel could attend a training camp in preparation for an attack such as the May 27, 2009 attack in Lahore, Pakistan; and

**Indictment**                                                                 **Page 2**

12.  **KHAN** would provide financial support and advice to Jaleel's family while Jaleel traveled to Pakistan and after he died.

**Overt Acts**

13.  In furtherance of the conspiracy, and to effectuate the illegal objects of the conspiracy, one or more of the conspirators knowingly performed one or more overt acts in the District of Oregon and elsewhere, including but not limited to the following:

a.  On December 14, 2005, **KHAN** wrote Jaleel stating that he felt he was "at a stand still "in the matter of knowledge and practice" and that "[e]verything that we used to talk about now seems like a distant dream." In the same email, **KHAN** asked Allah to forgive them for his laxness and inaction.

b.  On January 14, 2006, Jaleel sent **KHAN** an email that referred to past mutual promises he and **KHAN** had made to seek martyrdom in the name of Allah: "where are the words you said with tears in your eyes that 'we shall strive until Allah's word is superior or until we perish'??? 'this world is of no use to us so let's sacrifice ourself [sic] for the pleasure of Allah in his way???"

c.  In April 2006, Jaleel and a small group from the Maldives attempted to travel from the Maldives to Pakistan to train for violent jihad in Iraq or Afghanistan. Jaleel and the group were detained in Colombo, Sri Lanka and returned to the Maldives where Jaleel was ultimately placed under house arrest. Jaleel's efforts failed in part because he lacked a contact in Pakistan and the plan was not "well thought out." Jaleel said that it was his job to "manufacture" a contact in Pakistan during the group's 2006 trip.

/ / /

**Indictment**                                                                 **Page 3**

d.     On October 16, 2008, Jaleel wrote an email to **KHAN** in which Jaleel said that he had "planned to hasten [his] departure" from the Maldives to Pakistan and may "go quickly to [**KHAN**'s home country] place and proceed without being able to wait for [**KHAN**]," but that he would "leave bread crumbs" for **KHAN**. Jaleel also told **KHAN** that **KHAN** must bring Jaleel's family "even in my abcense [sic]" and let them "join yours."

e.     On October 19, 2008, **KHAN** responded to Jaleel's email. In the response, **KHAN** provided detailed advice to Jaleel regarding his trip to Pakistan. **KHAN** advised Jaleel to request separate tickets for the outbound and return journeys so that the return ticket could be redeemed for cash.

f.     In the October 19, 2008 email, **KHAN** offered to arrange for money to be sent to Jaleel, and said he would do his best to help bring Jaleel's family to Pakistan.

g.     Jaleel left the Maldives for Pakistan in October 2008. Before he left, Jaleel gave contact information for **KHAN** and **KHAN**'s wife to his wives. Jaleel told his wives to contact **KHAN** and his wife for advice or assistance. He told one of his wives that **KHAN** was like a brother to him.

h.     On October 20, 2008, **KHAN** offered to arrange for Jaleel to receive money in Pakistan from an associate.

i.     In October 2008, **KHAN** and Jaleel discussed how to hide Jaleel's true purpose in traveling to Pakistan from Jaleel's family. On October 20, 2008, Jaleel wrote, "I think I might not be able to wait... to get a job, but rather I might have to travel." **KHAN** responded, "I understand fully well, but your inlaws don't need to know that..., So for them it is better that they think that you have a job there ( and it is a job and a duty for us ...)."

**Indictment**                                                                                       **Page 4**

j.      On October 23, 2008, Jaleel wrote **KHAN** an email in which he said that he needed to leave the Maldives quickly and that he needed "a quick answer and an advice [from **KHAN**] regarding my situation."

k.      On October 26, 2008, Jaleel told **KHAN** in an email that he needed "$2500 for everything." Jaleel used coded language throughout this email to describe his activities and to conceal the fact that the money was for immediate admission to a terrorist training camp.

l.      In the October 26, 2008 email, Jaleel also asked **KHAN** to take care of Jaleel's family who would "have no options" once they had left the Maldives. Jaleel asked **KHAN** to take Jaleel's family with him, to educate his children, and to "bring them up well."

m.      **KHAN** promised to help Jaleel's family: "I understand your worries about your family. . . . I will try to support them as much as possible."

n.      On October 28, 2008, Jaleel wrote to **KHAN** that he was "now in Lanka and I hope to get to Pak[istan] within two days." This email was sent from Colombo, Sri Lanka. On or about October 31, 2008, Jaleel wrote to **KHAN** that he "hopefully shall leave for the course soon, maybe within days. So do mail me soon so I shall [know] what I need to do here."

o.      On November 3, 2008, **KHAN** sent directions to Jaleel to pick up the money he needed to enter the training camp. Using coded language, **KHAN** told Jaleel to pick up the money from "Person B," a "trusted brother" but to "keep discussion with him to a minimum."

p.      To arrange for this transfer, **KHAN** contacted "Person A," an individual who **KHAN** knew could quickly arrange for Jaleel to pick up money in Pakistan. "Person A" arranged for the money to be available for pick-up from "Person B" in Karachi, Pakistan.

/ / /

**Indictment**                                                                                          **Page 5**

q.      On November 5, 2008, **KHAN** offered to "expedite" the travel of Jaleel's two wives from the Maldives to Pakistan if Jaleel thought it was a good idea.

r.      On November 5, 2008, Jaleel wrote **KHAN** that Jaleel was about to "get admission" and would be able to get "entry for 1000 only," so that he would have extra money out of the $2,450 that **KHAN** had given him. Jaleel also told **KHAN** that "my family is now waiting for u to contact. So be in touch with them always and give them hope." Jaleel also asked **KHAN** what he should do with the remaining money. **KHAN** advised him to keep it to send it to Jaleel's two wives in the Maldives.

s.      On November 5, 2008, **KHAN** told Jaleel to leave a closed envelope with "Person B" that could be transferred to **KHAN**. He told Jaleel to write on the envelope: "For REAZ KHAN . . . FROM: AJ Industries Don't write anything extra on the envelope. Any thing you need to write, put it inside."

t.      On November 15, 2008, **KHAN** exchanged email messages with an associate of Jaleel's about how to arrange travel for Jaleel's two wives.

u.      On May 27, 2009, Jaleel and two other individuals conducted a suicide attack at the ISI Headquarters in Lahore, Pakistan. The blast resulted in the death of approximately 30 people (including Jaleel and the other two bombers) and injured 300 more.

v.      Jaleel was recorded in a video released by As Sahab (the media outlet of al-Qaeda), shortly after the attack. In the video Jaleel makes a statement taking responsibility for the attack. Jaleel can also be seen preparing for the attack at a training camp in what is believed to be the Federally Administered Tribal Area of Pakistan.

/ / /

**Indictment**                                                                **Page 6**

w.    On June 2, 2009, **KHAN** wired approximately $750 via Western Union

from a Fred Meyer store in Tigard, Oregon, to one of Jaleel's wives in the Maldives.

All in violation of Title 18, United States Code, Section 2339A.

Dated this *27th* day of December 2012.

A TRUE BILL.

_____

OFFICIATING FOREPERSON

Presented by:

S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon

_____

ETHAN D. KNIGHT, OSB #99298
Assistant United States Attorney
(503) 727-1000

Exhibit B:

*US v. Khatallah*,
1:14-cr-00141-CRC (D.D.C.)
Indictment

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**
**Grand Jury Sworn in on November 1, 2013**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **CRIMINAL NO.** |
| | : | |
| AHMED ABU KHATALLAH, | : | |
|   also known as Ahmed Mukatallah, | : | **VIOLATION:** |
|     Defendant. | : | |
| | : | **18 U.S.C. § 2339A** |
| | : | **(Conspiracy to Provide Material** |
| | : | **Support and Resources to Terrorists** |
| | : | **Resulting in Death)** |
| | : | |

## INDICTMENT

The Grand Jury charges that:

## COUNT ONE

**(Conspiracy to Provide Material Support and Resources to Terrorists Resulting in Death)**

Beginning on a date unknown to the Grand Jury but no later than on or about September 11, 2012, and continuing until on or about September 12, 2012, in Libya, that is, outside the jurisdiction of any particular state or district, but within the extraterritorial jurisdiction of the United States, and pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia, defendant **AHMED ABU KHATALLAH**, also known as Ahmed Mukatallah, did knowingly and intentionally conspire and agree with other conspirators, known and unknown to the Grand Jury, to provide material support and resources to terrorists, that is, personnel including himself and others, as defined in Title 18, United States Code, Section 2339A(b)(1), knowing and

intending that the material support and resources were to be used in preparation for and in

carrying out a violation of Title 18, United States Code, Section 930(c), Killing a Person in the

Course of an Attack on a Federal Facility Involving the Use of a Firearm and a Dangerous

Weapon, and a violation of Title 18, United States Code, Section 844(f), Maliciously

Damaging and Destroying U.S. Property by Means of Fire and an Explosive, and this offense

resulted in death.

(**Conspiracy to Provide Material Support and Resources to Terrorists Resulting in Death,**
in violation of Title 18, United States Code, Section 2339A)

A TRUE BILL

FOREPERSON

Attorney of the United States in
and for the District of Columbia