IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

```
UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )  No. 3:12-cr-00659-MO-1
                               )
      v.                       )
                               )
REAZ QADIR KHAN,               )  December 19, 2014
                               )
          Defendant.           )  Portland, Oregon
_____)
```

**Status Conference**

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL W. MOSMAN

UNITED STATES DISTRICT COURT JUDGE

```
1
2                          APPEARANCES
3

4    FOR THE PLAINTIFF:     Mr. Ethan D. Knight
                            Mr. Charles F. Gorder, Jr.
5                           United States Attorney's Office
                            1000 S.W. Third Avenue, Suite 600
6                           Portland, OR 97204

7

8

9    FOR THE DEFENDANT:     Ms. Amy M. Baggio
                            Baggio Law
10                          621 S.W. Morrison, Suite 1025
                            Portland, OR 97205
11

12                          Mr. Ryan T. O'Connor
                            O'Connor Weber LLP
13                          522 S.W. Fifth Avenue, Suite 1125
                            Portland, OR 97204
14

15

16   COURT REPORTER:        Bonita J. Shumway, CSR, RMR, CRR
                            United States District Courthouse
17                          1000 S.W. Third Ave., Room 301
                            Portland, OR  97204
18                          (503) 326-8188

19

20

21

22

23

24

25
```

```
 1                    (P R O C E E D I N G S)
 2          THE COURT:  Go ahead, sir.
 3          MR. KNIGHT:  Good morning, Your Honor.  We are
 4   present in the matter of the United States v. Reaz Khan.
 5   This is Case No. 12-cr-659.  Ethan Knight and Charles
 6   Gorder, appearing on behalf of the United States; Amy Baggio
 7   and Ryan O'Connor are appearing with Mr. Khan, who is
 8   present and out of custody.  And we are here today, Your
 9   Honor, for a scheduling conference in Mr. Khan's case.
10          THE COURT:  Thank you.
11          Good morning.
12          MS. BAGGIO:  Good morning, Judge Mosman.
13          THE COURT:  I have the second proposed litigation
14   schedule, and so given that this was filed just a little
15   while ago, is that still the schedule you're proposing?
16          MS. BAGGIO:  No, sir.
17          THE COURT:  Tell me about the change.
18          MS. BAGGIO:  Thank you, sir.
19          Your Honor, I have two big-picture changes to the
20   schedule.  The first is that I am requesting a one-month
21   proposed continuance of the proposed deadlines of rounds 4
22   and 5.  And I can explain why that is necessary if the Court
23   would like additional information.  But I did confer with
24   the government.  They have no objection to a one-month
25   continuance of the deadlines as to round 4, but they do
```

object to a one-month continuance of round 5 because of the

implications it has on further scheduling.

THE COURT:  Go ahead and explain.

MS. BAGGIO:  Thank you, sir.

Your Honor, as to round 4, there are a couple of

different things that are at play here:  one, there have

been some intervening circumstances with regard to counsel

on the case, and I'm going to be taking over the round 4C --

I'm sorry, it's the motion to compel.  I need some time to

be able to do that, Your Honor.

With regard to the jury instructions that are also

set forth in round 4, we would -- we understood, pursuant to

the Court's minute order, which appears at court record 156,

my understanding was that the Court was going to issue an

opinion on the defendant's motion to dismiss the indictment,

and our position -- and I believe the government would agree

with this -- we think both sides would benefit from the

Court's opinion about the conspiracy, as set forth in the

indictment, and that that would help us be in a better

position to argue about the proper jury instructions with

regard to conspiracy, which is one of the round 4 motions.

THE COURT:  All right.

MS. BAGGIO:  And then, Your Honor, with regard to

round 5, these are the surveillance motions, and we have

made great progress on these in terms of constitutional

facial challenges, but I simply am finding that I need more
time to work through what we discussed as sort of an
as-applied challenge, based on the discovery in this case,
as well as working through the statutory violations.  And
therefore I'm asking for an additional month to be able to
do that on round 5.

THE COURT:  Between 5A through G, which are facial
and which are as-applied -- or which are -- which are the
facial challenges, I guess?  Everything else is either
as-applied or something else.

MS. BAGGIO:  Or statutory, yes, Your Honor.  We
are going to have both aspects to all of those rounds, Your
Honor.

THE COURT:  All right.

And I've received pro hac vice applications from
the ACLU.  Which motions are they going to assist on and
represent Mr. Khan?  I granted those.  Where will they be
assisting?

MS. BAGGIO:  Thank you, Your Honor.

Specifically with the FISA Amendments Act
litigation.  However, we have discussed the fact that they
do have additional experience on some of the other foreign
intelligence areas, and so they will be consulting with me
on those, but the appearance and the specific briefing I
expect will be with regard to the 702 challenge.

1          THE COURT:  Does that spill over into round 6 or

2    not?

3          MS. BAGGIO:  No, sir.  I believe that's all

4    contained within round 5.

5          May I add something to the 702, though, Your

6    Honor?  Because of my familiarity with the record, I will be

7    working with the ACLU with regard to the as-applied and

8    statutory challenges.

9          THE COURT:  All right.  You would like an

10   extension for round 4 for a variety of reasons, perhaps the

11   principal of which is that for 4B, you're taking over for

12   Mr. Ransom yourself now?

13         MS. BAGGIO:  That is true as to 4B, that's

14   correct.

15         THE COURT:  And for round 5, you'd like a

16   one-month extension, including of the -- of course of the

17   hearing date.

18         And your concern, then, Mr. Knight and Mr. Gorder,

19   is that the round 5 extension makes the current trial date

20   unlikely, or what is your concern?

21         MR. KNIGHT:  That's correct, Your Honor.

22   Necessarily by moving at least the hearing date one month,

23   if we're to look at the proposed schedule, that would take a

24   hearing to the end of July, when it's at least contemplated

25   right now that the trial documents would be due.  And we

1    would expect an order to follow -- an order and opinion to

2    follow sometime after the hearing.  And I think both

3    parties, in all likelihood, would want an order or opinion

4    on the FISA issue prior to submission of the trial

5    documents.  We get into a situation where we're then talking

6    about moving the trial documents to the pretrial date, and

7    then perhaps moving the trial date further than we

8    contemplated.  Our concern is that if we begin to chip away

9    at some of these dates with long time frames, we talk about

10   2016 for a trial date, and we have concerns about pushing

11   the case out that far.

12            THE COURT:  What are you currently thinking the

13   schedule set forth in the second proposed litigation

14   schedule chart would do for the trial date?  What were you

15   thinking the trial date was going to end up being?

16            MR. KNIGHT:  Well, I think it's our hope that it

17   be sometime in the fall, perhaps November, of course,

18   depending on the Court's schedule.

19            THE COURT:  Is it your perception that the

20   one-month extension you're asking for makes a November trial

21   not likely?

22            MS. BAGGIO:  I think it would be possible to still

23   meet the November trial, Your Honor.  I think if not

24   November, the beginning of December would be reasonable,

25   because as I had worked through the dates, I thought that

1  with our proposed schedule, we could begin trial November

2  the 2nd, and if we were to shift everything by a month, that

3  would put us the beginning of December.

4          THE COURT:  So let's walk through that just for a

5  minute.

6          If I granted your request, then we'd be holding a

7  hearing on round 5 in late July, right?

8          MS. BAGGIO:  That's correct, Your Honor.

9          THE COURT:  And what, if anything, does that do to

10  the round 6 motions in limine?

11          MS. BAGGIO:  I don't believe that has any impact

12  on that.

13          THE COURT:  They're independent?

14          MS. BAGGIO:  That's correct.

15          THE COURT:  Trial evidence is what we're talking

16  about with round 6?

17          MS. BAGGIO:  That's correct.

18          THE COURT:  So at least on the motions in limine.

19          And then the constitutional motions, also

20  unaffected?

21          MS. BAGGIO:  Correct.

22          THE COURT:  So that's round 6.

23          Round 7 also -- at least 7A runs independent,

24  right?

25          MS. BAGGIO:  I see no impact on round 7, Your

1    Honor.

2            THE COURT:  Round 7 unchanged.

3            So what you're really talking about is trial memo,

4    expert disclosures and the like, and you'd want -- you'd

5    want it -- I guess I could see the importance of knowing

6    something about round 5, but what really of great importance

7    is it to know the answer to the statutory issues, the FISA

8    issues, when you're putting together witness lists, expert

9    disclosures and the like?

10            MR. KNIGHT:  I guess only insofar as it forms what

11    evidence may be admissible or the government may be

12    permitted to offer at trial.  And I analogized it to a

13    motion to suppress, where the Court may rule on the

14    admissibility of certain pieces of evidence, depending on

15    how the motion is fashioned.

16            THE COURT:  Since there are various authorities

17    for the evidence, some authorities may result in suppression

18    and some not, and that would have kind of a patchwork effect

19    on your --

20            MR. KNIGHT:  That's right, both insofar as the

21    admissibility and the foundation of certain pieces of

22    evidence that may be offered.

23            THE COURT:  All right.  So if we held a hearing on

24    round 5 in late July, I guess there's a couple of ways this

25    can go.  On the one hand, I'm intimately familiar with these

issues already.  So in terms of a bare answer, I think we'd
be able to have a lengthy hearing and a discussion, I'd hear
your arguments, and fairly soon you've have an answer.

My impression -- I haven't looked at this closely,
but my impression is that we're sort of at the tail end of a
number of these cases taking a look at this issue around the
country, right?

MS. BAGGIO:  Yes, Your Honor.

THE COURT:  Fifth Circuit, a couple in California,
the district court in D.C., elsewhere, right?

MS. BAGGIO:  This issue with regard to 702
specifically, Your Honor, or --

THE COURT:  Yes.  702 specifically and related
statutory challenges.

MS. BAGGIO:  Yes, sir.

THE COURT:  And so if I'm right about that, you
mentioned that you'd want an opinion, and then that would be
something you'd use in handling the round 8A trial
documents.  I guess I think that's unlikely if I don't have
anything to add.  If I end up -- there's two bodies of case
law, well-written opinions on both side.  Two of them are
Court of Appeals cases, I think, aren't they?

MS. BAGGIO:  Yes, sir.

THE COURT:  So well-written opinions on both
sides, and I end up agreeing with one side or the other and

1    have nothing new to say, then I'm not sure I'd write an

2    opinion.

3         I'm kind of thinking out loud here in terms of how

4    long we really need after that hearing before you could

5    begin filing trial memos, expert disclosures and the like.

6         MS. BAGGIO:  May I add something, Your Honor?

7         THE COURT:  Yes.

8         MS. BAGGIO:  The other thing I think is in play

9    here is when we'll be arguing what we're referring to as

10   as-applied challenges or potential statutory violations.  A

11   piece of that will be our request for access to the actual

12   orders and opinions.  We recognize that courts haven't

13   heretofore allowed defense counsel access to that

14   information, but that will be a part of our presentation,

15   that we'll be seeking access to that information.  And if

16   the Court were to be inclined to grant us access, then that

17   would be, I think, another round of litigation there.

18         And if I could add that --

19         THE COURT:  The first time you'd be presenting

20   that argument would be late July?

21         MS. BAGGIO:  That would be part of our motions,

22   Your Honor.  So the way we have them structured is our

23   constitutionality challenges, our as-applied and statutory

24   challenges -- or statutory violations, rather, and a piece

25   of that, the way we have them structured is we've done the

1  best we can to argue this, we ask the Court to consider

2  these issues that we've raised in this motion, but we

3  believe that this showing establishes the need for defense

4  counsel to have actual access to the opinions and -- I'm

5  sorry, orders and applications so that we can more

6  thoroughly argue them on behalf of Mr. Khan.

7          THE COURT:  I guess what I'm asking is, so you're

8  right, that if I grant that, that would delay it even more

9  than a month, but that's not a request you're prepared to

10  make earlier than the other motions and memos in round 5?

11          MS. BAGGIO:  Your Honor, I believe, as I read the

12  law, that the Court has to do the independent review first,

13  and only after the Court does the independent review does

14  the Court then have the ability -- this is under the Seventh

15  Circuit *Daoud* case, to decide that defense counsel access is

16  necessary.

17          THE COURT:  Well, we'll cross that bridge when we

18  get to it, then.

19          For now, let's assume we hold a hearing in late

20  July, and that you get an answer fairly soon -- an answer.

21  You'd get an opinion in, say, early September, if that's the

22  route it took.  We'd have a November trial date, a November

23  pretrial conference, and something like 30 days prior to

24  that, documents start coming due in October.

25          So if you had -- if you had an answer in August

1  and an opinion in September, wouldn't you be ready to start

2  filing trial documents in early October for a mid November

3  trial?

4         MS. BAGGIO:  Yes, and -- but if I could tweak that

5  one more level, Your Honor.  In speaking with Mr. Knight

6  about the most efficient way for us to proceed, we expect

7  that both parties will be using expert witnesses, and we

8  expect there may be robust litigation as to the

9  admissibility or any limits on expert testimony.

10         And what we thought might make things more

11  efficient is if we could have an earlier than trial

12  documents deadline for expert disclosures so we could do a

13  separate round of *Daubert* litigation as necessary as to

14  experts, and have the Court's ruling on those experts before

15  we submit our trial documents, because, of course, that

16  would have an impact on the way we try our cases.

17         THE COURT:  I agree.

18         MS. BAGGIO:  So, Your Honor, I think we can do

19  that really independently of what happens with round 5

20  motions as well.  So --

21         THE COURT:  Let me say this.  I think that's

22  correct, and there -- the ideal is that you don't do

23  anything that may result in unnecessary work, but that's

24  only an ideal.  I mean, it happens all the time that people,

25  you know, prepare for an expert hearing, and then after

they've prepared, they learn that, you know, one piece of
their expert testimony isn't going to be necessary or
allowed or something like that.

So there's no magic to a particular trial date,
but there is, I think, an interest both for the defendant
and of course under the Constitution and statutes for the
public to have a speedy trial.  I am interested in making it
happen this year, and I think it's probably not in anyone's
interest -- certainly not your client's -- to have it happen
right in the middle of December.  I don't want a distracted
jury.  So we're probably talking about, at the latest, the
later or really even preferably early November.

A three-week trial is still what everyone thinks?

MS. BAGGIO:  Yes, Your Honor.

THE COURT:  So the ideal -- the ideal trial time
for the jury, to make sure we don't have a jury that's
hurrying to get to Thanksgiving or worried about Christmas,
the ideal time is the start of November.  And then we work
backwards and have a pretrial conference late October, those
documents coming due all through October, probably a *Daubert*
hearing late September, something like that.

And that probably means that you're at least
thinking about maybe drafting things regarding the *Daubert*
hearing before you have an opinion from me.  But keep in
mind you'll have almost certainly an answer from me orally,

where you'll know where things are going.  All I do with an
opinion is take my sort of stumbling words in court and try
and make them pretty.  So I think you'll have time.  If we
hold a late July hearing, you'll know what you need to know
and be ready for things to happen in September, October and
November.

So I appreciate that -- the position you're in
now, although I intend to appoint a replacement for
Mr. Ransom, means that right now you're under the gun for
some of these deadlines, and in any event, the impact of my
ruling requiring you to challenge a number of authorities,
I'm not sure how many of them are truly necessary, means
that I put extra work on you, and I'm sympathetic to that.
And so I'm going to grant your request for that delay, and
we'll now try to pick dates that sort of follow what I just
gave as general ideas or placeholders.

So I grant a one-month delay of the schedule set
forth in the second proposed litigation schedule.

Dawn or Elizabeth, do you know a docket number on
this?

THE CLERK:  160.

THE COURT:  60?

THE CLERK:  160.

THE COURT:  160.  Thank you.

So I'm talking about 160.

1    And Ms. Stephens, I'm going to go through those,

2 and if you'll just confirm that the dates I'm about to say

3 are weekdays.

4    THE CLERK:  Yes.

5    THE COURT:  So round 4 currently has a motion due

6 January 20.  That would make that February 20th, which is a

7 weekday.

8    The response, March 9, the reply March 23, and

9 then hearing April 16.

10    THE CLERK:  Clarification.  You have time

11 available April 21st from 10:00 a.m. to 12:00 p.m.

12 April 16th, this courtroom will be used for Nats hearings.

13    THE COURT:  Is the schedule otherwise open that

14 day?

15    THE CLERK:  Yes.

16    THE COURT:  All right.  Let's keep that date and

17 we'll be in a different courtroom.

18    THE CLERK:  10:00 a.m. to 12:00 p.m.?

19    THE COURT:  10:00 a.m. to 12:00 p.m. April 16th

20 for the hearing on what's described in docket 160 as

21 round 4.

22    Do we need to do anything with round 3?

23    MS. BAGGIO:  I don't believe so, Your Honor.  We

24 had requested that the Court would carry a decision on the

25 mens rea jury instruction so that it could be discussed

along with round 4C, which are the pretrial instructions

regarding conspiracy and the available statutory maximums

based on the amendment.

THE COURT:  All right.  That's fine.

Round 5, the motion would then be due -- it was

January 28th, so that becomes February 28th.

THE CLERK:  Clarification for the clerk.  Back on

round 3, March 16th, we have the *Daubert* hearing originally

set from 9:00 a.m. to 11:00 a.m., and we have other criminal

matters set at the 11:00 hour.  Could we reset from 10:00 to

12:00 to 9:00 to 11:00?

MS. BAGGIO:  Your Honor, I think that that

proposed round 3 argument deadline would then become the

April 16th from 10:00 to 12:00.  That would join that other

round 4 motions.  I misspoke when I said we don't need to do

anything with 3.

THE COURT:  So we'll take that hearing and cancel

it on the date it was scheduled and add it to the April

setting.

MS. BAGGIO:  Yes, sir.

THE COURT:  Does that sound right, Mr. Knight?

MR. KNIGHT:  Yes, that's right.

THE COURT:  That's what we'll do.  Then turning to

round 5, the motion would now be due February 28th.  Again,

is that a weekday?

 1            THE CLERK:  It is not.

 2            THE COURT:  The next weekday?

 3            THE CLERK:  Would be March 2nd, or Friday,

 4    February 27th.

 5            THE COURT:  February 28th -- you said Friday is

 6    what day?

 7            THE CLERK:  Friday is February 27th.

 8            THE COURT:  All right.  Let's make it Friday,

 9    then, as the due date.

10            The response had a fair gap there.  That's still

11    the gap we need between them?

12            MR. GORDER:  Yes, Your Honor.

13            THE COURT:  So that's May, approximately, 29th?

14            THE CLERK:  Correct.

15            THE COURT:  May 29th, then.

16            The reply, June 27th.

17            THE CLERK:  The date would either be Friday,

18    June 26th, or Monday, June 29th.

19            THE COURT:  So make that Monday, June 29th.

20            And the hearing would be, if we could, July 29th.

21            THE CLERK:  We have a trial set that date.  We do

22    have time available Monday, July 27th, at 3:00 p.m. to

23    5:00 p.m., or in the morning, 10:00 to 12:00.

24            THE COURT:  We'll take both blocks of time and set

25    for it that Monday.

1          Then if I understood correctly, round 6 would

2  proceed in the schedule set out in docket 160; is that

3  right?

4          MS. BAGGIO:  Yes, Your Honor.

5          THE COURT:  And same with round 7?

6          MS. BAGGIO:  Yes, sir.

7          THE CLERK:  The hearing time of June 1st will not

8  work for the Court.  You are not in the office at that time.

9          We have time available Friday, May 29th.

10         THE COURT:  Does that work for all of you?

11         MS. BAGGIO:  It works for the defense, Your Honor.

12         MR. KNIGHT:  It works for the government.  Thank

13  you.

14         THE COURT:  That will be the new date for round 6

15  hearing.

16         Round 7?

17         THE CLERK:  How much time do you need for that

18  hearing?

19         MS. BAGGIO:  Round 6?

20         THE CLERK:  I'm sorry, yes.  Round 6.

21         MS. BAGGIO:  I would say two hours probably.

22         THE COURT:  Minimum?

23         MS. BAGGIO:  Yes.

24         THE COURT:  This is when the ACLU is here?

25         MS. BAGGIO:  No.  We're talking about round 6.

1  This would be the motions in limine -- are we talking about

2  round 6?

3          THE COURT:  I'm sorry, I'm on the wrong page.

4  There we go.

5          MS. BAGGIO:  Potential testimony as to 6A, but

6  limited, and pure legal argument on 6B and 6C.

7          THE COURT:  All right.

8          THE CLERK:  We have time available 10:00 a.m.

9  through 12:00 p.m.

10          THE COURT:  That's fine.

11          All right.  That completes round 6.

12          Then round 7, also same dates, correct?

13          MS. BAGGIO:  Yes, Your Honor.

14          THE COURT:  July 6th.  Is that still available,

15  Ms. Stephens?

16          THE CLERK:  It is, and we have a full day.  Would

17  you like to block the entire day out?

18          THE COURT:  We'll start with a couple hours,

19  change it as we get closer if we need to.

20          Any testimony on round 7?

21          MR. GORDER:  Your Honor, could I just ask -- and I

22  don't know, the 4th of July is a Saturday, so it would be a

23  federal holiday either on Friday or Monday.  I'm not sure

24  which one it is.

25          THE CLERK:  It's on Friday.

1          MS. BAGGIO:  I believe it's the 3rd is the federal

2   holiday.

3          MR. GORDER:  So the 6th would be fine.

4          THE COURT:  All right.  And how long a hearing, do

5   you think, Mr. Gorder, on round 7?

6          MR. GORDER:  Two hours, Your Honor.

7          THE COURT:  That sound about right?

8          MS. BAGGIO:  I think so, Your Honor.  We would

9   potentially have testimony as to round 7A, but it would be

10  relatively limited.  I think two hours would be fine.

11         THE COURT:  All right.

12         THE CLERK:  We have time available 10:00 a.m. to

13  12:00 p.m.

14         THE COURT:  That's fine.

15         All right.  And then we'll set the *Daubert*

16  hearing, and then work backwards from that to talk about

17  exchanges.  So I think we talked about a *Daubert* hearing in

18  September, mid September to late September somewhere.

19         Do you have a suggested time for that,

20  Ms. Stephens?

21         THE CLERK:  We have time available both Monday the

22  14th and Tuesday the 15th.

23         THE COURT:  Do either of those dates work for

24  government counsel?

25         MR. KNIGHT:  Provisionally, yes.  Obviously, we

1  need to confer with our experts to figure if they're

2  available.

3          THE COURT:  Same answer?

4          MS. BAGGIO:  Your Honor, I would ask if it would

5  be possible if we could do it the week of the 5th, just to

6  allow a little bit more time.  If we're talking about the

7  trial starting November the 2nd, then we're coming up on a

8  pretrial conference deadline.

9          THE COURT:  I'm fine with that.  The only issue

10  would be you'd have to hustle to exchange your expert

11  reports and -- prepare and exchange your expert reports

12  after our late July hearing.  I'm not sure how much they

13  turn on that hearing.

14          MS. BAGGIO:  I don't expect that they would to any

15  extent, other than the possibility of -- I don't think for

16  *Daubert* purposes it would have an impact.

17          THE COURT:  Are yours principally cultural

18  experts?  What sort of experts?

19          MS. BAGGIO:  Yes, sir.

20          THE COURT:  How about the government?

21          MR. GORDER:  Again, Your Honor, I don't think,

22  absent total suppression of the evidence, it would affect

23  our expert testimony either.

24          THE COURT:  What sort of expert testimony are we

25  talking about?

1          MR. GORDER:  Well, we're going to have an expert
2    on some of the terrorist issues in the case, Pakistan and
3    that sort of thing.
4          THE COURT:  All right.  Well, those do sound like
5    they're independent of the July briefing and hearing.
6          So the week of the 5th is fine if I'm available,
7    Ms. Stephens.  Is there a date that week?
8          THE CLERK:  Monday the 7th is Labor Day.  We have
9    time available Tuesday the 8th, Wednesday the 9th, 10th, or
10   11th.
11         MS. BAGGIO:  Are we talking about September?
12         THE CLERK:  September 2015, yes.
13         THE COURT:  Do any of those dates work for
14   government counsel?
15         MR. KNIGHT:  The 9th, Your Honor.
16         THE COURT:  Ms. Baggio, does the 9th work?
17         MS. BAGGIO:  And this is for the hearing?
18         THE COURT:  Yes.
19         MS. BAGGIO:  Yes.
20         THE CLERK:  How long?
21         MS. BAGGIO:  I expect that to be a significant
22   hearing, Your Honor.
23         MR. KNIGHT:  I would think at least a day,
24   depending on how many --
25         THE COURT:  All right.  I'll block out that day.

1    Is the 9th a Wednesday?  Thursday?

2             THE CLERK:  The 9th is a Wednesday and we also

3    have time to break out on Thursday, the 10th.

4             THE COURT:  Don't even tell them we have that

5    available.

6             THE CLERK:  We don't.

7             THE COURT:  Otherwise they'll use it.

8             So that just means sometime in advance of the

9    hearing, you'll have exchanged expert reports.

10            When can the government do that with regard to its

11   experts, giving your opponent time to assimilate what you've

12   given before the hearing?

13            MR. GORDER:  How about July 15th, Your Honor?

14            THE COURT:  Thank you.

15            Will something like that work for your experts

16   also?

17            MS. BAGGIO:  Yes, I believe so, Your Honor.

18            THE COURT:  Simultaneous disclosure.  These aren't

19   experts who are rebutting each other, they're just your own

20   experts?

21            MS. BAGGIO:  There may be some rebutting of each

22   other, but that's not the primary role, I don't believe,

23   Your Honor.

24            THE COURT:  So July 15th, you'll exchange your

25   expert reports, and then we'll hold a *Daubert* hearing on the

1    date we just discussed, the 9th of September.

2          MS. BAGGIO:  And, Your Honor, would you like to

3    schedule actual briefing in between for a *Daubert* motion and

4    response and reply?

5          THE COURT:  Yes.  So if you have them on the 15th,

6    you can't really start briefing until you have those, then

7    you need a couple weeks to read them and be ready to start

8    your simultaneous briefing?

9          MS. BAGGIO:  I would ask for until August 17th.  I

10   think it's going to be pretty heavy lifting with this one,

11   Your Honor.  So I would request a month to be able to file.

12         THE COURT:  Well, then we won't have time for

13   replies.  It will just be a quick challenge running each

14   direction, each of you challenging the other's experts, and

15   then a response right before the hearing.

16         MS. BAGGIO:  If that would be permissible.  If the

17   Court wants me to shave off a month, if the Court thinks it

18   would benefit from further briefing in terms of a round of

19   responses and replies, we could do that earlier.

20         THE COURT:  Replies are often helpful, but less so

21   if we're holding a hearing.  I don't always know that we're

22   going to hold a hearing, but here I'm sure we will, so let's

23   cut off the replies so that you can make your initial

24   motions and memos as comprehensive as possible.

25         MS. BAGGIO:  Thank you.

1          THE COURT:  That's a weekday, Ms. Stephens?

2          THE CLERK:  Yes, August 17th.

3          THE COURT:  So your -- each of your challenges to

4    your opponent's experts -- that is, those motions and

5    memos -- are due August 17th.

6          And then just towards the end of the month, it

7    won't be a full two weeks because we have a hearing, but

8    maybe -- what's the 25th?  Is that a weekday?

9          THE CLERK:  The 25th of August is a Tuesday.

10          THE COURT:  That's fast, but of course I need time

11    to read these responses before the hearing.  So your

12    responses will be due the 25th of August.

13          Then we have the hearing date.  Now we'll set the

14    trial date and a pretrial conference date.

15          So I'd like to start at the very first part of

16    November, the first Tuesday of November.

17          THE CLERK:  You want to start on a Monday or do

18    you want to start on a Tuesday?

19          THE COURT:  A Tuesday.

20          (The Court and the clerk have a discussion off the

21    record.)

22          THE COURT:  All right.  So we'll start trial in

23    this case November 3rd, 2015 -- that's a Tuesday -- at

24    9:00 a.m.  We'll hold a brief meeting the day before,

25    November 2nd, to go over any last-minute issues and talk

1   about the trial, 10:00 the 2nd.

2           The pretrial conference will be the week of -- we

3   may want to make it almost two weeks before.

4           THE CLERK:  We have time available Monday,

5   October 19th.

6           How long would you like the conference to go for?

7           THE COURT:  We'll set it for most of the day.  Is

8   that day open?

9           THE CLERK:  It is.

10          THE COURT:  Does that day work for the United

11  States?

12          MR. GORDER:  Yes, Your Honor.

13          THE COURT:  For Ms. Baggio?

14          MS. BAGGIO:  Yes, Your Honor.

15          THE CLERK:  So 10:00 a.m. through 5:00?

16          THE COURT:  For now, yes.  We won't use all that

17  time but we'll use a fair amount of it.

18          And that means that in mid September, after we've

19  had the *Daubert* hearing, you'll start filing witness lists,

20  exhibit lists, motions in limine.  We'll work through jury

21  instructions and verdict form, anything like that, and we'll

22  resolve those at the pretrial conference.

23          We have the Monday before trial to pick up any

24  lingering issues in this trial.

25          Mr. Knight?

1   MR. KNIGHT:  Judge, just to clarify, we have a due

2   date then for the trial memorandum?

3   THE COURT:  Well, I'm not giving you that now, but

4   I'll send you what's called a trial management order that

5   will give you all these dates, but it will be a series of

6   dates beginning 30 days prior to the pretrial conference.

7   MR. KNIGHT:  Thank you.

8   THE COURT:  And, you know, a filing with a

9   response, they begin to overlap as the month wears on, but

10  they all get in on time for me to receive them all prior to

11  the pretrial conference.

12  The case has taken some not surprising twists and

13  turns in the production of discovery and the like, but we're

14  fairly far down the road at this point.  So I want to

15  emphasize that I intend to hold this trial date.  I think

16  anything else, a month delay I think is bad for everybody,

17  particularly the defendant, in terms of jury attention and

18  the like, and a longer delay I think runs afoul of my own

19  obligation under the Speedy Trial Act and the U.S.

20  Constitution to hold a speedy and public trial.  So I intend

21  to hold everyone's feet to the fire on this trial date and

22  make it work.

23  Anything further regarding scheduling from the

24  United States?

25  MR. KNIGHT:  Not scheduling, but we do have one

other issue, Your Honor.

THE COURT:  Anything further on scheduling from the defense?

MS. BAGGIO:  No, Your Honor.

THE COURT:  Go ahead, Mr. Knight.

MR. KNIGHT:  Thank you, Your Honor.

The Government would wish to raise an issue that was brought before the Court in the past few days, and that relates to the motions by the two attorneys from the ACLU that appear pro hac vice in this case.  The government understands the Court has granted those motions.  We feel obligated, however, to state on the record our concern that such an appearance not in an amicus fashion but as attorney of record -- as an attorney of record may create a conflict in this case.

Quite simply, our concern is this:  that on its face, the ACLU has an interest.  That interest may not be the interest of Mr. Khan.  It is appearing in this case presumably to take a certain position in litigation about a statute and about the government's role in using that statute.  That may indeed be different than the interests of the attorneys for Mr. Khan in the criminal case and what indeed may happen to Mr. Khan in a criminal case.

We raise that for the Court's concern, understanding, of course, the motion has been granted, but

1    we wanted to state our concerns on the record.

2            THE COURT:  Thank you.

3            That's fairly often a concern when an

4    institutional litigant with a litigation mission attempts to

5    represent an individual, since it's not unusual for the

6    individual's interests not to neatly match the institution's

7    stated litigation interest nationally.

8            Here, I think, given their limited scope of

9    representation, they actually line up fairly neatly, and in

10   any event, that's a question I assume Ms. Baggio had thought

11   about, more aware than I am how those may or may not match

12   up, and decided they matched up well.  So I continue to

13   grant the pro hac vice request of the ACLU.

14           Any -- I asked a moment ago if you had anything

15   more regarding scheduling.  Do you have other issues you

16   need to raise?

17           MS. BAGGIO:  No, Your Honor.

18           THE COURT:  All right.  Thank you.  We'll be in

19   recess.

20           I am going to meet with Ms. Baggio in camera and

21   ex parte regarding appointment of a replacement counsel.

22           So I'll have you come into chambers just to

23   informally discuss who might be available out there.

24           MS. BAGGIO:  Yes, sir.

25           THE COURT:  Thank you.

1          MR. KNIGHT:  Thank you, Your Honor.

2          THE CLERK:  This court is in recess.

3          (Proceedings concluded.)

--o0o--

       I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature or conformed signature is not certified.


*/s/Bonita J. Shumway*                    *1/2/2015*
BONITA J. SHUMWAY, CSR, RMR, CRR         DATE
Official Court Reporter